## Richmond.

### SOUTHERN RAILWAY CO. V. SATTERFIELD'S ADMINISTRATRIX.

#### January 12, 1911.

#### Absent, Cardwell and Whittle, JJ.

1. RAILROADS—*Rules—Failure of Employee to Observe—Personal Injury—Proximate Cause*—Where the rules of a railroad company declare that a red light or the absence of any light or an imperfectly displayed light at a siding where a signal is usually shown shall be regarded as a stop signal, and that these signals are to be observed notwithstanding other signals displayed for the movement of trains, there can be no recovery by the personal representative of an engineer who was killed by running his train into an open siding in the night, where all the positive evidence in the case shows that the switch stand displayed a red light, although some of the witnesses whose attention was not especially directed to the subject, state that they did not see it, or did not recollect to have seen it; nor can there be any recovery if there was no signal, or an imperfectly displayed signal at the siding. Although the servants of the company were negligent in leaving the switch open, the engineer's disregard of the positive rules of the company was the proximate cause of his death.

2. RAILROADS—*Signals—Duty of Employee to Observe*—Although one inexpert in the business would be confused by lights displayed for their guidance, it is the business of those in charge of a train to see and to discriminate with respect to such signals and to know their relative positions; and upon their faithful compliance with the rules depends their own safety and that of the lives of those who are committed to their charge.

3. MASTER AND SERVANT—*Rules—Failure of Servant to Obey—Personal Injury—Negligence*—As the master is bound, at his peril, to make rules for the protection of his servant, the servant is equally bound, at his peril, to obey them, and he cannot recover damages from the master for injuries which the observance of the rules would have prevented. In such a case, the disaster is brought upon the servant by his own voluntary act, and he, and not the master who has discharged his duty, should bear

the loss. The result is not changed by the fact that the breach of the rule was the result of negligence, and was not wilful.

Error to a judgment of the Circuit Court of Pittsylvania county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*William Leigh*, for the plaintiff in error.

*Peatross & Harris*, for the defendant in error.

Keith, P., delivered the opinion of the court.

This was an action brought by the defendant in error to recover of the Southern Railway Company damages for the death of her intestate, which she alleges was caused by the wrongful act of that company.

Satterfield, the decedent, was an engineer in the employment of the Southern Railway Company, at the time of his death in charge, as engineer, of a through train going south, which ran into an open switch at a station known as Stokesland, was derailed, and Satterfield was killed. The plaintiff in error does not deny its negligence, but relies upon the contributory negligence of the engineer to defeat a recovery.

There was a demurrer to the evidence by the railway company, the court gave judgment in favor of Satterfield's administratrix, and the case is before us for review.

The facts which the evidence proves or tends to prove are as follows: At Stokesland station the Southern Railway runs nearly north and south, and is double tracked. The eastern track is the north-bound track, or the one over which trains moving north pass, and the western track is known as the south-bound track, or that over which trains moving

south must pass. The depot or station house is just east of the north-bound track, and near the southern corner of the house next to the track there is a semaphore upon a pole about twenty-four feet in height. A short distance south of the station house there is a switch stand, and near the switch stand and about eighteen inches to the west of it there is a mail crane. The switch stand controls a switch, which diverges in a southwesterly direction from the south-bound track, gives admission to a siding which runs parallel to the south-bound track for a considerable distance, and also to the Danville and Western railroad tracks which diverge from the south-bound track on the main line of the Southern road in a southwesterly direction. The semaphore signal is equipped with a red paddle and a white paddle. In its normal position it shows the red arm or paddle standing straight out at the top of the post upon which it is placed at right angles to the line of the railway tracks. Upon the approach of a train it is the duty of the engineer at a proper distance to call for signals, when, if the track is not clear or there are orders for the engineer or conductor of the approaching train, the red arm of the semaphore remains stationary over the track; if, however, the track is clear and there are no orders for the train, the red paddle drops and is replaced by the white arm of the semaphore. The red arm, therefore, is a signal to stop, either because the track is not clear to the next block station or as a direction to the engineer or conductor to call for orders. The switch signal is also equipped so that when it is closed in the daytime it shows a white face to the approaching train; when the switch is open it shows a red face to the approaching train. At night a white light is displayed as a signal that the switch is closed; a red light shows that it is open. The mechanical construction of the switch stand is such that if open it must show a red face or a red light; if closed, it must show a white face or a white light. Upon the mail crane, which it will be remembered was about a

foot and a half to the west of an alignment with the switch signal, there was on the night of the accident a white light. Upon this mail crane is hung the mail bag, to an arm so adjusted that the mail bag is automatically caught and taken along with the train without the necessity of halting the train for that purpose. In order to do this, it is of course necessary that the crane should be in a certain position and proximity with reference to the mail car which is to receive it.

Such was the environment on the evening of the accident when the south-bound through train, which was due at Stokesland at 4:57, but which was nearly an hour behind time and arrived at the station at 5:45; came within signaling distance of the station. The engineer, in the prescribed manner, called for signals, and thereupon the employee in charge dropped the red arm and displayed the white arm of the semaphore, the effect of which was to say to the engineer in charge of the train: "The block is clear to the next block station; there are no orders for your train, and you may, therefore, proceed." When the train reached the switch stand the switch proved to be open; the train took the switch passed into it and was derailed.

There is no doubt that the train, the tracks, the semaphore, the switch signal and the mail crane were all in proper order. and that the accident was due wholly to the failure to close the switch. That switch being open must have displayed a red light, and that red light it was the duty of the engineer to observe and obey as a danger signal, although the semaphore showed the track to be clear, and directed him to proceed.

Section 108 of the rules of the railway company provides: "Block signals control the use of blocks, but unless otherwise provided, do not affect the movement of trains under the time table or train rules, nor dispense with the use of the observance of other signals whenever or wherever they

may be required." Section 533 provides: "In approaching sidings and yards they (engineers), must be especially careful as to the indications and positions of all switches." Section 534, that "They will be held accountable for passing a switch which is not in the right position for them. The absence of switch lights should be taken as a danger signal in accordance with the general rules." And section 27, that "A signal imperfectly displayed, or the absence of a signal at a place where a signal is usually shown, must be regarded as a stop signal, and the fact reported to the superintendent."

The evidence in this case is, that the switch stand displayed a red light. All of the positive evidence is to that effect. Some of the witnesses did say that they did not see or did not recollect to have seen it, but it does not appear that their attention was especially directed to the subject. But even if there were no red light, the result is the same, for the absence of the light was, in and of itself, a danger signal, which the engineer was bound to observe.

It is said too, that the lever controlling the switch may not have been pressed down firmly into its proper position, and that it failed to show a full red light to the approaching train; but this contingency is also provided for by the rules which declare that a signal imperfectly displayed, as well as the absence of a signal at a place where it is usually shown, must be regarded as a stop signal, and the fact reported to the superintendent.

Reliance is placed upon the fact, as excusing the engineer, that the white light upon the mail crane, which was about the same height as that upon the switch stand, had deceived him. But the proof is that the light upon the mail crane was not in a line with the switch light, but about a foot and a half to the west of it, or, as seen from the approaching train moving south, to the right of the switch. One inexpert in the duties of an engineer would be confused

by the lights displayed for their guidance, but it is the business of those in charge of a train to see and to discriminate with respect to such signals, and to know their relative positions; and upon their faithful compliance with the rules depends their own safety and that of the lives of those who are committed to their charge.

As was said by Judge Whittle in *Southern Railway Company* v. *Johnson's Admx., ante,* p. 499, 69 S. E. 323, "The imperative necessity for adherence to the policy of enforcing strict observance of the rules in question is obvious. Indeed, failure of duty either by railroad companies or their employees in a matter so essential to the protection of life and property would be little short of criminal. And the courts cannot be too careful to avoid impairing the usefulness of such rules by ingrafting upon them unnecessary limitations by way of exception or qualification."

The opinion in that case reviews a great many authorities and from them deduces the conclusion which we have just stated. Among the cases cited is that of *Kansas City* v. *Francis,* 110 Mo. 387, 19 S. W. 935, which is so apposite to that before us that we again quote from it: "It would be most unreasonable and unjust, after imposing upon the master the duty of promulgating a rule for securing the safety of his servant, to permit the servant to recover from the master damages for injuries which the observance of the rule would have prevented. As the master is bound, at his peril, to make the rules, the servant should be equally bound, at his peril, to obey them. In such case the disaster is brought upon the servant by his own voluntary act, and he and not the master who has discharged his duty should bear the consequences."

It is true that there is no evidence in the case before us that the failure to observe the signal was voluntary or wilful, but it is manifest that if the engineer had obeyed the rules the accident would not have happened, and his failure to obey them, while not wilful, was negligent. If, as all the

positive evidence states, the switch stand displayed a red signal, he should have seen and obeyed it; if there was no signal at the switch stand, or the signal was imperfectly displayed, he should have regarded it, in either event, as an order to stop.

Upon the whole case, we are of opinion that the judgment upon the demurrer to the evidence should have been for the defendant. The judgment of the circuit court is, therefore, reversed.

*Reversed.*