### Richmond

## CHESAPEAKE AND OHIO RAILWAY V. MCCARTHY.

#### November 21, 1912.

1. EVIDENCE—*Admissibility—Waiver.*—An objection to the admissibility of evidence is not available to one who has himself elicited the same facts in the cause.
2. INSTRUCTIONS—*How Read—Curing Defects.*—Instructions in a case are to be read as a whole, and if, when so read, it can be seen that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions were defective. Defects in one instruction may be cured by a correct statement of the law in another.
3. VERDICTS—*Evidence to Support—Province of Jury.*—The verdict of a jury will not be set aside as contrary to the evidence where there is evidence in the cause sufficient, if credited by the jury, to sustain the verdict. It is the province of the jury to weigh the evidence.

Error to a judgment of the Circuit Court of Botetourt county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*J. M. Perry* and *R. L. Parrish,* for the plaintiff in error.

*W. E. Allen* and *R. Granville Curry,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action of trespass on the case was instituted by defendant in error, D. F. McCarthy, against plaintiff in

error, Chesapeake and Ohio Railway Company, to recover damages for permanent personal injuries alleged to have been sustained by the plaintiff because of negligence on the part of the defendant company. At a trial of the cause there was a verdict and judgment for the plaintiff against the defendant company for $6,000, to which judgment this writ of error was awarded.

McCarthy, who for twenty-one years had been employed by the defendant company as a fireman, on July 11, 1910, was on duty in the line of his employment on the passenger train of the defendant company, No. 33, running from Lynchburg to Clifton Forge on the defendant company's James River Division. About 8 o'clock A. M. of the day named, at a station on James river known as Indian Rock, McCarthy sustained an injury to his foot in jumping from his engine as his train approached the station. The facts and circumstances under which the accident occurred are practically not controverted in the record, and appear to be as follows:

At Indian Rock station the railroad tracks lie at the foot of the river bluff, following the curve of the river, and as the station is approached from the direction of Lynchburg and at a distance of about half a mile, what is called the "passing track" diverges from the main track to the right, the double track extending to a point beyond the depot. Within four or five hundred feet of the depot and to the right, a siding, known as the "lime kiln track" leaves the passing track, while beyond this switch and at a distance of 150 to 200 feet east of the depot a second siding known as the "depot track" leaves the passing siding at the right, which siding passes around behind the depot and is used in loading and unloading freight. At each of the two mentioned switches in the passing tracks, and especially at the switch of the "depot track," is located a "dwarf target," or signal, eighteen inches high, which shows white

when the switch is closed and automatically changes to red when the switch is open.  The block system is used on the defendant company's railroad; Indian Rock being a block station, equipped with the semaphore signal in common use.  By reason of the long curve and the bluff on the right, the view of the engineer of a west-bound engine approaching this station is to some extent cut off both by the bluff and the boiler of his engine, while from the fireman's side the view is unobstructed.

On the occasion of this accident one of the cars of an east-bound freight train, No. 78, had been derailed some little distance east of Indian Rock depot, and at Balcony Falls, eight miles to the east, McCarthy and his engineer were given a "caution card," which required them to proceed with caution and to look out for the obstruction then in the block.  When they came to the passing siding, half a mile east of the depot, they were flagged and let into the passing siding from the main track, in order to pass the freight train.  McCarthy afterwards took his seat on the box at his side, looking ahead out of the front window of the cab at the station which they were approaching, and had just taken hold of the bell-card to ring the bell, the engine having been "cut off" and the train drifting by its own momentum, at a speed of about fifteen miles an hour. McCarthy, as stated, was looking towards the station and saw some freight cars on the depot track, but it seems that he did not see the indication of the block signal (the semaphore), as he did not call that signal to his engineer; nor did he, for reasons he stated at the trial, see the switch target, and he further explained that if he had actually seen the indication of the semaphore it could not have warned him of the open switch in front of him, since the semaphore and the switch target are operated independently of each other, the semaphore meaning no more than to stop at the station, which his train was going to do anyhow.

A few minutes before the passenger train, upon which McCarthy was running, reached the depot (or loading) track, the switch of that track had been negligently left open by a brakeman of the freight train which had just been passed, and as his train reached the depot track Mc-Carthy saw the front trucks of his engine turn into the switch, whereupon he jumped from the gangway of the engine to the ground, landing heavily on one of his feet and fracturing or otherwise injuring the ankle bone or astragalus. The engineer remained at his post, applied the emergency brake and stopped the train within a short distance, but not until the engine had collided with a camp car on the depot track. The headlight was broken, but the engine was not otherwise injured and as soon as its pilot was disentangled from the broken car, the train proceeded to its destination, Clifton Forge.

At the trial the defendant company admitted the negligence of its servant, the brakeman of the freight train, in leaving the switch of the depot track thrown, but con tended, (1) that if McCarthy had obeyed the rules of the company, made for his protection as well as that of the passengers on his train, he necessarily must have seen the danger signal, showing an open switch, and thus have avoided the accident; that if he had used his eyes, the red target was directly in his vision and must have conveyed its warning to him; that "had the rules been obeyed in particulars referred to, it is inconceivable that the engineer and fireman would both have failed to discover the switch signals, or the absence of such signals, all or any of which would have warned them of the danger in time to stop a train under control and thus have averted the accident;" and (2) that the circumstances did not justify McCarthy, as a prudent man, in jumping from his engine.

Certain rules of the defendant company had been put in evidence at the trial, including Rule 343, requiring the

engineer  and fireman, when approaching a block station, to announce to each other the indications of the signals; and on re-direct examination of the plaintiff, McCarthy, by his counsel, he was asked:

"Q. Had the time come for you to indicate to the engineer, or the engineer to indicate to you, the condition of that signal (the semaphore)?"

The defendant company, by counsel, objected to this question, on the ground that the rules of the company, which were in evidence, and which directed calling the indications of the signals upon approaching the station, were conclusive of the matter, and that the witness should not be permitted to testify to conclusions of his own in contradiction of the duties imposed by said rules; that the evidence so sought was immaterial and incompetent; but the court overruled the objection, and the witness answered: "No, sir, the time hadn't come, and not until both observed the signals or indications of the signals;" which ruling of the court is made the basis of the defendant company's first assignment of error here.

If the evidence sought by the question objected to was "immaterial and incompetent," this assignment of error would be without merit, for it appears in the record that prior to the question McCarthy, as a witness in his own behalf, had been asked by defendant company's counsel on cross-examination, "Did you call to the engineer any signal as you went into Indian Rock?" to which the witness replied, "No, we hadn't got up to that."   Again and subsequent to the ruling of the trial court made the basis of this assignment of error, the defendant company, by its counsel, elicited from the witness substantially the same evidence which is objected to.

This court has repeatedly held that an objection to the admissibility of evidence is unavailable to one who has himself elicited the same facts in the cause. *Douglas Land*

*Co.* v. *Thayer Co.,* 107 Va. 292, 58 S. E. 1101; *Va. & S. W. R. Co.* v. *Bailey,* 103 Va. 205, 49 S. E. 33, and authorities there cited.

There is some confusion appearing in the second assignment of error, the assignment stating that the evidence objected to was that of H. T. Gabbert, the engineer running the train from which McCarthy jumped and received his injuries, while the record discloses, as counsel admit in their reply brief, that it was evidence elicited from McCarthy himself that was objected to. The evidence objected to had reference to the five or six cars on the loading or depot track, into which McCarthy's engine ran through the switch negligently left open, and he was asked: "I understood you to say that if they (the cars) had been loaded and struck there, it would have done a great deal of damage?" to which the witness answered: "Well, it would have done a great deal of damage." This evidence is objected to on the ground that the question called for a "mere expression of opinion, which is immaterial, incompetent and irrelevant."

McCarthy had been asked, without objection, just preceding the question just quoted and objected to, whether or not he thought that his engine was running into a solid track of loaded cars, and answered, "Yes, sir, certainly I did. There is usually a full of loads in there; always full of cars, as a general thing." He was also put through this line of examination on cross-examination by the defendant company's counsel:

"Q. Well, then, these passenger cars, if this freight which you ran into had been solid, your four passenger cars would have jammed right up against the tank, wouldn't they? A. I should think so.

"Q. And if there had been loaded cars in front, you claim it would have made a bad mix up there between the passenger cars and the tank, wouldn't it? A. I expect it would."

McCarthy, during his examination before the objection under consideration was made, was asked without objection whether if the loading track had been full of loaded cars there would have been any difference in the way the engine would strike and the damage it would do, to which he answered: "I should think so." "Q. Why? Just explain to the jury now? A. A solid lick; why it would have a greater force coming in right behind them to shear those bolts right off" (meaning the bolts connecting the tender with the engine.)

With this state of the record, it is inconceivable that the defendant company could have been prejudiced by the ruling of the trial court complained of.

The third assignment of error was waived by counsel in the oral argument, and, therefore, need not be further considered.

The fourth assignment of error calls in question the ruling of the court in giving, over the defendant company's objection, plaintiff's instruction No. 5, which is as follows: "The court instructs the jury that if they believe from the evidence that the defendant negligently caused the switch of the load track at Indian Rock to be left thrown and open, and that such negligence of said defendant company caused the engine and train upon which the plaintiff was then at work to run in and upon said load track and strike with great force and collide with a certain empty freight car then and there standing upon said load track, and that the plaintiff seeing that there was going to be a collision, and on account of the apprehended collision jumped from said engine to the ground, thereby receiving the injuries complained of in the declaration, and that when the plaintiff jumped from said engine he acted as a reasonably prudent man would have acted under the circumstances as they appeared to him, such conduct did not constitute contributory negligence on his part."

When the instructions asked for by the defendant company, all of which were given by the court, are turned to, it is seen that the first of these instructions reads: "The court instructs the jury that if they believe from the evidence that McCarthy jumped from a moving engine and thus received the injuries of which he complains, he cannot recover in this case unless they further believe from the evidence that the appearances of danger to him were sufficient to justify a person of reasonable firmness and prudence in believing that his safety required him to jump from the car in order to escape the impending danger; and in considering whether or not the appearances of danger to him were sufficient, the jury may take into consideration his knowledge and experience as a fireman and the behavior of other persons, as well as the other circumstances of the case."

Reading plaintiff's instruction No. 5 alone, it seems to us that its language would most naturally be construed to mean that the actions of McCarthy were to be judged by the jury by the circumstances—not as they appeared to him, but as they would have appeared to a reasonably prudent man.    But if the criticisms of the instruction, which are purely technical and to the effect that the instruction fixed the standard by which McCarthy's actions were to be judged by the *"circumstances as they appeared to him,"* were sound, it would seem impossible that the jury could have been thereby misled with the defendant company's instruction No. 1 before them, telling them that McCarthy could not recover in this case unless they believed from the evidence *that the appearances of danger to him were sufficient to justify a person of reasonable firmness and prudence in believing that his safety required him to jump from the car in order to escape impending danger.*

"Although an instruction, standing alone, may have been misleading, the verdict of the jury will not on that account be set aside, where it appears that the objection

thereto was corrected by other instructions given by the court." In other words, instructions in a given case are to be read as a whole, and when so read, if it can be seen that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions were defective; and defects in one instruction may be cured by a correct statement of the law in another. *Wash. &c. R. Co.* v. *Quayle,* 95 Va. 741, 30 S. E., 391; *Adamson* v. *Norfolk, &c. Co.,* 111 Va. 556, 69 S. E. 1055.

The remaining assignment of error is to the action of the court in refusing to set aside the verdict of the jury as contrary to the law and the evidence.

As we have seen, the defendant company admitted at the trial in the lower court, and admits here, its negligence in leaving its switch to the loading track open. Therefore, its reliance is upon a showing of McCarthy's contributory negligence in order to defeat his recovery in this action. When the defendant company waived its third assignment of error it conceded that McCarthy could not, upon the facts which the evidence tended to prove, have been found guilty of contributory negligence in jumping from his engine, and, therefore, the sole question for consideration upon the assignment of error we are now considering is, whether or not the evidence is sufficient to sustain the finding of the jury that McCarthy was not guilty of contributory negligence in failing to keep a proper look out, as required by the rules of the defendant company, for signals and obstructions in front of his train and thereby avoid danger to himself and others on the train.

Unmistakably the accident in which McCarthy received his injury was primarily due to the negligence in leaving the switch to the loading track open, and the issue of fact sharply drawn by the evidence for the jury's determination was, whether or not McCarthy could and ought to have

seen the target at the switch left open in time to have notified his engineer to stop the train, and thereby have avoided the accident. .

The rules of the defendant company in evidence provide, that engineers in approaching sidings and yards must be especially careful as to the indications of signals, but with respect to firemen they require them, "as far as practicable when running to keep a lookout ahead for signals and obstructions." The distinction in the rules in this respect between the duties required of the engineman and those required of the fireman is obviously due to the fact that in performing all of the duties required of him the fireman is not always in a position to keep a lookout ahead for the indications of signals, hence the rules only require him to do so "as far as practicable." The situation of the defendant company's tracks at Indian Rock station, three in number—the main track, the passing track and the depot or loading track—was plainly placed before the jury by the evidence, and the rules of the company having any bearing upon the issues in the case were also in evidence. It would serve no good purpose to review the evidence at any very great length. The "target signal," which it is claimed McCarthy should have seen, had he been obeying the rules, in time to have avoided the accident to his train, was but eighteen inches high from the ground and located at the switch negligently left open, and in testifying before the jury he says that he could not have seen this target had he been looking for it, giving his reasons why he was not looking especially for it and why he could not have seen it, and the jury chose to accept as true his statement, corroborated as it was by the testimony of other witnesses. Among the facts testified to and not controverted is that as McCarthy's train, No. 33, approached the first switch, the "eastern switch," the train was flagged by one of the crew of the freight train which was standing on the main

track, and McCarthy, as fireman, and his engineer were told by the flagman that "they (No. 33) would have to pull through (the side track); they (the freight train) were standing on the main track and *they had the switches set for us.*"  Here was a repetition of the negligence of the defendant company's servants upon the freight train—one of whom had left the switch thrown at the loading track—by telling McCarthy and his engineer that the switches had been set, thus assuring them they could safely proceed over the passing track.  While the rule of the defendant company with respect to block signals states that these signals do not dispense with the observance of other signals, there is nothing in the rule to show that express statements as to the condition of subsequent switches, such as were made to McCarthy and his engineer by the flagman from the freight crew at the eastern switch, were to be disregarded. It is shown in the evidence, and without objection, that the said statement of the flagman from the freight crew was the usual thing done in the same circumstances.  McCarthy stated with respect to this custom: "It is customary when a train gets there and is delayed; if anything happens like this; why it is customary to pass through to avoid delay; they have all the switches set for us, flag us at the east end and pass us through."  There were other facts which the evidence tended to prove showing that the conditions were such at Indian Rock station that the engineman on the passenger train could not have seen the target at the open switch in time to have avoided running in, as the train did, upon the loading track, and there was evidence to the effect that it was the duty of the engineman to keep a lookout ahead in the direction of the depot in order to avoid injury to persons who might be in a position of danger of being struck by the approaching train, and also evidence tending to prove that McCarthy's view of the target signal at the open switch was obstructed by the

freight train standing on the main track and by the position of his engine as it ran in on the passing track.

With respect to the cases of *Southern Ry. Co.* v. *Satterfield,* 111 Va. 771, 69 S. E. 938; and *N. & W. Ry. Co.* v. *Cromer,* 101 Va. 667, 44 S. E. 898, so much relied on for the defendant company in this case, we deem it only necessary to say that there is no such similarity of facts in those cases as to make them applicable to this case.

We are of opinion that the circuit court did not err in refusing to set aside the verdict of the jury, and that its judgment upon the verdict should be affirmed.

*Affirmed.*