# Wytheville

## WHEALTON & WISHERD v. DOUGHTY.

### June 11, 1914.

1. BOUNDARIES—*Tidewater Lands—Low Water Mark—Extension of Lines.*—The bounds of every man's land lying on the seaboard is extended to ordinary low-water mark, and a drain or gut which goes bare at ordinary low water does not cut off or prevent the extension of such lines, but the same is continued across and beyond such stream down to ordinary low water mark; and if the division line between the uplands of two co-terminous owners is a straight line for some distance before it reaches high water mark, then the law continues such line in the same course to low water mark, and the burden is upon the party asserting it to prove that the course of such line has been changed below high-water mark.

2. BOUNDARIES—*Tidewater Lands—Marshes—"Adjacent."*—In an action to recover marsh land, it is misleading, in an instruction, to speak of a boundary of marsh land which does not touch the plaintiff's upland but is a part of a body of marsh that does touch his upland as "adjacent" to the upland of the plaintiff.

3. BOUNDARIES—*Tidewater Lands—Marshes—Instructions.*—In an action of ejectment to recover marsh lands adjacent to highlands on the seacoast, an instruction which assumes that the marsh land in controversy is "adjacent" to the upland of the plaintiff, and then tells the jury that as a matter of law the plaintiff is presumed to be the owner to low water mark and that a description of the land to the high water mark carries the ownership to the ordinary low water mark, unless this ownership is expressly excluded by the terms of the deed conveying the same, but fails to state in what direction the line dividing the uplands of the plaintiff and the defendant runs when it leaves the uplands and is to be continued until it reaches low water mark, is misleading and constitutes reversible error.

4. APPEAL AND ERROR—*Res Judicata.*—Rulings of this court, upon a former hearing, become the law of the case.

5. TITLE—*Disclaimer.*—If title to land is vested in a person by deeds

under which he claims, then such title cannot be divested out of him by any parol or verbal disclaimer by him or those under whom he claims, but only by deed or will executed in the manner prescribed by law.

6. EVIDENCE—*Boundaries—Admissions of Former Owner.*—While admissions of a former owner of a tract of land as to the boundaries of the tract are admissible in evidence in determining such boundaries, they are not conclusive.

7. INSTRUCTIONS—*Omissions—Harmless Error.*—The omission from one instruction of a correct statement of the law applicable to the facts of the case is harmless, where the same principle was embodied, in plain and unmistakable language, in other instructions given.

8. BOUNDARIES—*Location on Land.*—As a general rule the construction of all written documents given in evidence belongs to the court exclusively, but the location of a disputed boundary line is a question of fact for the jury.

9. APPEAL AND ERROR—*Errors Not Pointed Out.*—Errors suggested in the petition for a writ of error, but not pointed out or pressed in argument, will be considered as waived.

Error to a judgment of the Circuit Court of Northampton county in an action of ejectment. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*Otho E. Mears,* for the plaintiffs in error.

*John E. Nottingham, Jr.,* and *Ben T. Gunter,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This case was before this court on a former occasion, and the decision then rendered is reported in 112 Va. 646. The opinion of the court sets out so fully the facts of the case that we deem it unnecessary to set them out at length again here.

Marion Scott and Mrs. Willietta Doughty are owners of adjoining farms in Northampton county, facing to the east on what is generally designated as the "Broadwater", which covers at high tide the marshes lying between the high land and the ocean. This action of ejectment, brought by Mrs. Doughty against Marion Scott and his lessees, Whealton and Wisherd, involves the title to 187½ acres of the marsh lands lying in front of and to the east of Scott's farm, and south of what would be a prolongation of the boundary line between his highlands and those of Mrs. Doughty and of the course of that line where it strikes high water, and also where it strikes a certain drain or gut around which this controversy hinges; Mrs. Doughty contending that this gut or drain does not go dry and consequently is the limit of low water mark, while Scott and his co-defendants insist that it does go dry at ordinary low water, thereby removing the point of the low water mark further east and to the most eastern point of the land in controversy, all of which is covered at high water, and a part thereof leased from Scott by Whealton and Wisherd for oyster-planting purposes.

The verdict and judgment at the first trial of the case was in favor of the plaintiff, Mrs. Doughty, for the land in question and $125 damages for its detention, and in the opinion of this court reversing that judgment and remanding the cause for a new trial, it was held that the plaintiff was not entitled to the marsh land in controversy by virtue of any deed or other title papers offered in evidence under which she claims, nor was she entitled to the land by adversary possession under color of title, the opinion concluding as follows: "The crucial question in the case is, whether or not the 'gut,' drain or channel which 'heads up' from Magothy Bay to or beyond the line which divides the highlands of defendant in error

and plaintiff in error's lessor ebbs bare at ordinary low water for an appreciable distance from said line, and if the jury's finding from the evidence be that said 'gut,' drain or channel does so ebb dry, the law of the case is as propounded in plaintiff in error's instructions 7 and 8 which were erroneously refused."

Instructions 7 and 8 referred to sought to have the jury told that by statute the bounds of every man's land lying on the seaboard is extended to ordinary low water mark, and that a drain or gut which goes bare at ordinary low water does not cut off or prevent the extension of such line, but the same is continued across and beyond such stream down to ordinary low water mark; that if the jury believed from the evidence that the division line between the plaintiff (Mrs. Doughty) and those under whom she claims, and the upland of the defendant (Scott) and those under whom he claims, is a straight line for some distance before it reaches high water mark, then the law continues such line in the same course to low water mark, and, if the course of such line has been changed below high water mark, the burden was upon the plaintiff to show it, but in deciding that question the jury should consider all the evidence in the case.

It appears that at the second trial the question, did said 'gut,' drain or channel ebb dry at low water, was made the crucial question, to which each side directed practically all of their evidence, and to this end certain plats and charts, made by competent surveyors, were introduced to show the location of the upland, marsh land and also the flats or oyster grounds of both plaintiff and defendants, and the bodies of water, with names, adjacent to the 187½ acres of marsh in controversy.

The jury, under instructions from the court, rendered a verdict in favor of the plaintiff for the marsh land claimed in the declaration and $250 damages for its de-

tention by the defendants, which verdict the court refused to set aside and entered judgment thereon, to which judgment the defendants applied for and obtained this writ of error.

The first error assigned calls in question the propriety of the court's ruling in giving, over the objection of plaintiffs in error, defendant in error's instruction No. 1, as follows: "The court instructs the jury that if they believe from the evidence that Mrs. Doughty is a fee simple owner of the upland to which this marsh is adjacent, the presumption of law is that she owns to ordinary low water mark, and this presumption of law can only be rebutted by showing that said lands were granted by the Commonwealth of Virginia since 1818, and the court further instructs you that a description of land to high water carried the ownership to ordinary low water mark, unless this ownership was expressly excluded by the terms of the deed conveying the same."

It is conceded by the learned counsel for defendant in error that the marsh in controversy does not actually touch her "upland", but it is contended that because it is itself a part of a body of marsh that does touch her "upland" the word "adjacent" as used in the instruction could not be considered as intended to tell the jury that the marsh land in controversy must actually touch the "upland" of the defendant in error, since the word "adjacent" is frequently used *"in the sense of being near and in the vicinity or neighborhood of."*

As pointed out above, this court in disposing of the former writ of error ruled that defendant in error was not entitled to the marsh land in controversy by virtue of any deed or other title papers offered in evidence under which she claims, nor was she entitled to the land by adversary possession under color of title, and stated the crucial question of fact to be determined by a jury

at the new trial awarded plaintiffs in error, which rulings became the law of the case.

Instruction No. 1, *supra,* assumes in the outset that the marsh land in controversy is "adjacent" to the upland of defendant in error, and then tells the jury that as a matter of law she is presumed to be the owner to low water mark, and that a description of land to high water mark carries the ownership to ordinary low water mark, unless this ownership is expressly excluded by the terms of the deed conveying the same, but fails to tell the jury in what course or direction the line which separates the upland of defendant in error from the upland of plaintiff in error (Scott) runs when it leaves the upland and is to be continued till it reaches low water mark. Not only was the instruction misleading but it does not conform to what this court held in its former opinion would be the law of this case, if the jury found at a second trial thereof the fact to be that the "gut," drain or channel in question does go dry for an appreciable distance from where the line dividing the uplands of the contending parties reaches it.

The plats and surveys introduced in evidence at the last trial have been examined, but they do not, as we think, afford any reason for a change of the view taken by this court in its former opinion, that when the dividing line between plaintiff in error, Scott, and defendant in error's uplands, which is undisputed, reaches the gut, drain or channel running up to said line along the eastern boundary of Scott's upland lying to the west of the disputed marsh, if this gut, drain or channel ebbs bare at low water, this marsh is adjacent to his land, and since he owns to low water his boundaries are extended by law so as to include this disputed marsh, defendant in error having no title thereto by reason of any deed or other title papers offered in evidence, or by adversary possession under a claim or color of title.

The law in such cases is nowhere better stated or reasoned out upon the authorities than in the opinion of the court by Riely, J., in *Foster* v. *Groner,* 94 Va. 657, 27 S. E. 496, where it is said: "The limit or boundaries of the land being extended by the law down to low water mark, it necessarily follows, in the absence of any direction in the statute to the contrary, that they must be extended in the same direction that they reach high water mark. It does not seem to us that the statute reasonably admits of any other construction. To extend a limit of bound is to extend a line, and to extend a line is to carry it forward, to prolong it, and to prolong it means primarily to continue it in the same direction." *Waverly W. F. & Imp. Co.* v. *White,* 97 Va. 176, 33 S. E. 534, 45 L. R. A. 227.

The giving at the last trial of plaintiffs in error's instructions 7 and 8, which were erroneously refused at the former trial of the case, does not cure the error in the defendant in error's instruction No. 1, which was not only confusing in that it was inconsistent with said instructions 7 and 8, but it in effect left the jury free to infer that the court was of opinion that defendant in error acquired title under the statute to the marsh land in controversy, by reason of its being "adjacent" to her uplands, regardless of whether the "gut" goes bare or not, and regardless of the course of the line between her and plaintiff in error, Scott, when it reaches the "gut," and that too notwithstanding there is no evidence whatsoever to show that the upland of defendant in error extended to the north of the marsh land in controversy. It is no answer to the complaint of this instruction to say that it was intended only to apply "in the event the jury should believe that the said 'gut,' drain or channel did not ebb bare at ordinary low water." This contention but emphasizes the fact that the instruction was both confusing and misleading and should have been refused.

Plaintiffs in error asked for the following instruction: "A". The court instructs the jury that if they believe from the evidence the title to the land in controversy was vested in the defendants by deeds under which they claim, then that such title could not be divested out of them by any parol or verbal disclaimer by them or those under whom they claim such title, but only by deed or will executed in the manner prescribed by law;" which instruction the court gave after amending it by striking out the latter clause, "but only by deed or will executed in the manner prescribed by law."

In *Cline's Heirs* v. *Catron,* 22 Gratt. 385, the opinion says: "If a title to the land in controversy was vested in the plaintiff by the deeds and patents under which he claimed, then such title could not be divested out of him by any parol or verbal disclaimer by him of such title, but only by deed executed in the manner prescribed by law."

While admissions of a former owner of a tract of land as to the boundaries of the tract are admissible in evidence in determining such boundaries, they are not conclusive. In this case, however, the court gave at plaintiff in error's request instructions Nos. 9 and 10, which embodied the principle of law propounded in instruction "A" as asked, in language plain and unmistakable, as applied to the facts which the evidence in this case tended to prove, and we are of opinion that the court's amendment of instruction "A," if error at all, could not have been harmful to plaintiffs in error.

We are also of opinion that the court did not err in refusing plaintiff in error's instruction No. 11, which was as follows: "The court instructs the jury that the land sued for in this action is embraced within the descriptive boundaries in the deed dated July 24, 1893, from W. T. Pritchell and Otho F. Mears, special commissioners, to Marion Scott, produced in evidence."

As a general rule the construction of all written documents in evidence belongs to the court exclusively, but it is equally as well settled that the location of a disputed boundary line is a question of fact for the jury. The line of demarcation between the two classes of cases is clearly pointed out by Burks, J., in *Colliers* v. *Southern Ex. Co.,* 32 Gratt. (73 Va.) 723, where the opinion says: "The rule as laid down by Baron Park in *Nelson* v. *Hartford* is generally accepted. The construction of all written instruments, he says, belongs to the court alone, whose duty it is to construe all such instruments as soon as the words in which they are couched and the surrounding circumstances, if any, have been ascertained by the jury; and it is the duty of the jury to take the construction from the court either absolutely, if there be no words of art or phrases used in commerce, and no surrounding circumstances to be ascertained; or conditionally, where those words or circumstances are necessarily referred to them." See also *Reusens* v. *Lawson,* 91 Va. 226, 21 S. E. 374; *Mitchell* v. *Williams,* 114 Va. 423, 76 S. E. 949; *Honaker* v. *Shrader,* 115 Va. 318, 79 S. E. 392.

The refusal of the court to give plaintiffs in error's instructions Nos. 13 and 14 is suggested in the petition for this writ of error, but the error, if any, is not pointed out or pressed in argument, and we shall consider it as having been waived.

As the judgment of the court below has to be reversed for the reasons stated, the verdict of the jury set aside and the cause remanded for another trial, the remaining assignment of error, which involves a discussion of the evidence introduced at the last trial, will not be here further considered.

*Reversed.*