## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## EASTERN COAL AND EXPORT CORPORATION V. BEAZLEY & BLANFORD.

### June 14, 1917.

### Absent, Burks, J.

1. INSTRUCTIONS—*Not Based on the Evidence.*—It is well settled that it is error to give an instruction when there is no evidence to support it.

2. INSTRUCTIONS—*Read as a Whole—Erroneous Instruction Cured by Another.*—Although an instruction, standing alone, may have been misleading, the verdict of the jury will not on that account be set aside, when it appears that the objection thereto was corrected by other instructions given by the court. In other words, instructions in a given case are to be read as a whole, and when so read, if it can be seen that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of the instructions were defective. Defects in one instruction may be cured by a correct statement of the law in another.

3. INSTRUCTIONS—*Refusal to Give Instruction Covered by Other Instructions.*—The omission from one instruction of a correct statement of the law applicable to the facts of the case is harmless, where the same principle was embodied, in plain and unmistakable language, in other instructions given.

4. DAMAGES—*Avoidable Consequences.*—The doctrine of avoidable consequences applies to consequential damages and not to direct damages flowing from a breach of contract.

5. SALES—*Damages—Avoidable Consequences.*—Defendant entered into a contract with plaintiffs to deliver coal to plaintiffs at an agreed price. Subsequently, defendant informed plaintiffs that it was unable to fulfill its contract, but that it had turned plaintiffs' order over to another corporation, which had assumed all responsibility as sellers and suppliers of the coal, and requested plaintiffs to address a letter to that corporation confirming defendant's action. Plaintiffs declined to accede to that proposal, but expressed their willingness for the defendant to fill their order with coal obtained from that corporation. Plaintiffs had never heard of the other corporation and were un-

willing to accept it as a substitute for the defendant. Besides, there were several material differences between the terms of the original contract and the one they were asked to accept by way of substitution.

*Held:* That defendant could not thus relieve itself of liability under its contract. It would, indeed, be a. strange perversion .of the doctrine of avoidable consequences if under it a defendant, who without sufficient cause had breached his contract, could compel a plaintiff, who was in no default, to enter into a contract for the delinquent's protection, the hazard of which he was unwilling to incur.

Error to a judgment of the Law and Equity Court of the city of Richmond, in a motion for damages. Judgment for plaintiffs. Defendant assigns error.

*Affirmed.*

The instructions given by the trial court were as follows:

1. The court instructs the jury that the order of the plaintiffs, dated October 27, 1915, delivered to the defendant's agent, was a mere proposal to buy the coal therein described, and was not binding upon either party, until it was accepted by the defendant, and the plaintiffs notified of such acceptance, and the conditions printed on the back of said offer as well as on the formal acceptance dated October 29, 1915, constituted a part of the contract. The contract between the parties in this case was in writing and consisted of the order slip, the letter of October 29th accepting the order and the form of acknowledgment enclosed therewith, and none of the oral testimony must be taken as altering or adding to the terms of the contract so made.

If the jury believe from the evidence that the defendant failed or refused to deliver the coal as stipulated in the contract, and that the plaintiffs were damaged thereby, then the plaintiffs are entitled to recover.

2. The court instructs the jury that if they believe from the evidence that the defendants were coal brokers and not producers and that this was known to the plaintiffs, and

that after the making of the contract between the parties, the contract became impossible of performance because, for causes beyond the control of the defendants, they were unable to procure the coal and the contract was so made impossible of performance by them; then the failure to deliver the coal would not entitle the plaintiffs to damages; the burden of proof being upon the defendants to show such impossibility of performance.

3. The court instructs the jury that it was the duty of the defendant to deliver the coal in accordance with its contract with the plaintiffs, that its inability to purchase the coal from the Smokeless Fuel Company could not *relive* it of its duty to deliver said coal to said plaintiffs unless the contract by reason thereof and upon all the evidence was rendered impossible of performance for causes beyond the control of the defendants as explained in another instruction; and its failure to deliver said coal in accordance with its contract, unless relieved of performance as stated, without fault on part of said defendants, rendered it liable to the said plaintiffs for all such damages as were the natural and proximate result of its failure to deliver the said coal in accordance with the terms of said contract.

4. The court instructs the jury that if they find from the evidence that the plaintiffs are entitled to recover, they shall assess their damages as follows:

The plaintiffs will be entitled to go into the open market and purchase the coal in the quantities and at the times stipulated for in the contract between the parties at the prevailing market price in the city of Portsmouth and its vicinity, considering the character of the plaintiffs' business and their methods and places of purchase of coal of the character contracted for, and they will be entitled to recover the difference between the contract price and the prices which they would have so to pay in purchasing the coal elsewhere.

If it was impossible for the plaintiffs to purchase said coal at the times and in the quantities mentioned in the con-

tract, in any other way than at retail rates in the city of Portsmouth, then the said retail rate should be considered by the jury in arriving at the market price of the coal; but, if the jury believe from the evidence that there was a breach of the contract by the defendants and that upon its breach or a time thereafter reasonably sufficient to allow for purchase and delivery within the time or times contemplated by the contract between the parties, the plaintiffs could have purchased elsewhere in the wholesale market the coal as stipulated in the contract between the parties, that this was known to the plaintiffs and that they could reasonably have provided themselves with such coal by so purchasing elsewhere on the wholesale market, then the price at which they could have so purchased the coal from other brokers than the defendants or from miners should be taken as the market price, the difference between which and the contract price is the measure of damages.

*S. S. P. Patteson,* for the plaintiffs in error.

*R. L. Montague,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

Beazley & Blanford, partners doing business in Portsmouth, Virginia, brought this motion against the Eastern Coal Export Corporation, coal broker, of Richmond, Virginia, to recover damages laid at $500, for breach of contract to deliver coal. We are asked to review a judgment for $400, rendered against the defendant upon the verdict of a jury.

The contract consisted of an order of the plaintiffs, dated October 27, 1915, delivered to the salesman of the defendant and accepted by the principal, for 500 tons of coal—5 hopcar loads of "Va. Anth. stove at $3.50 per ton;" and a like

quantity of "Va. Anth. Nut at $3.25 per ton." "Ship so as to complete order this month." "All orders taken subject to Conditions of Sale on reverse side."

The only conditions of sale pertinent to this inquiry are:

"1. The price named in this order is binding, and not subject to market fluctuation, unless specially stipulated in writing. * * *

"3. Payment is due 10th of each month for shipments made preceding month, subject to sight draft thereafter.

"4. All sales contingent upon strikes, insufficient car supply or other causes beyond our control. * * *"

The plaintiff in error assigns as error, the refusal of the court to give instructions 1, 2 and 3, requested by it, and the giving of instructions 1, 2, 3 and 4. The rejected instructions are as follows:

"1. The court instructs the jury that the order of the plaintiffs, dated October 27, 1915, delivered to the defendant's agent, was a mere proposal to buy the coal therein described, and was not binding upon either party, until it was accepted by the defendant, and the plaintiffs notified of such acceptance, and the conditions printed on the back of said offer as well as on the formal acceptance dated October 29, 1915, constituted a part of the contract. And if they believe from the evidence that it was beyond the power and control of the defendant to deliver Virginia Anthracite coal sold by the Smokeless Fuel Company, and that the defendant offered to deliver through the Fort Branch Coal Corporation of Richmond, Virginia, anthracite coal of the same grade at the same price and on the same terms, and the plaintiffs arbitrarily refused to receive it, then they are instructed that such refusal released the defendant from all further obligation to deliver the same, and they must find for the defendant.

"2. The court further instructs the jury that the measure of damages is the estimated loss directly resulting from the sellers' breach of contract, and is to be ascertained by the difference between the contract price and the market

price of the coal at the agreed time and place of delivery. And if they shall believe from the evidence that there was no difference in the market price, and that the plaintiffs refused to purchase the coal tendered them by the defendant as set forth in instruction No. 1, then they are instructed that the defendant was excused, under the terms of its contract from any further or other performance, and is not liable in damages to the plaintiffs.

"3. The court further instructs the jury that if they believe from the evidence that the Eastern Coal and Export Corporation used every effort in good faith to get the coal from the Smokeless Fuel Company, although it had only contracted to sell Virginia Anthracite Coal of the same quality which was sold by other dealers and not that sold only by the Smokeless Fuel Company, and that it was beyond its power and control to deliver the Smokeless Fuel Company's coal, they must find for the defendant."

The court did not err in refusing to give the foregoing instructions.

1. Instructions No. 1 and No. 2 are in part covered by the court's instructions, and there is no evidence to sustain the statement "that the defendant offered to deliver through the Fort Branch Corporation of Richmond, Virginia, anthracite coal of the same grade at the same price and on the same terms, and that the plaintiffs arbitrarily refused to receive it." It is well settled that it is error to give an instruction when there is no evidence to support it. That obviously correct rule has been repeatedly declared by this court (see *Norfolk & Western Ry. Co.* v. *Parrish*, 119 Va. 670, 89 S. E. 923) ; and " 'Although an instruction, standing alone, may have been misleading, the verdict of the jury will not on that account be set aside, when it appears that the objection thereto was corrected by other instructions given by the court.' In other words, instructions in a given case are to be read as a whole, and when so read, if it can be seen that the instructions could not have misled the jury, their verdict will not be disturbed, even though one or more of

the instructions were defective; and defects in one instruction may be cured by a correct statement of the law in another." *Chesapeake & Ohio Ry. Co.* v. *McCarthy,* 114 Va. 181, 188, 76 S. E. 319, 322.

For the principle that instructions must be read and construed as a whole, see cases cited in 16 Enc. Dig. Va. & W. Va. Rep. 710, 711.

"The omission from one instruction of a correct statement of the law applicable to the facts of the case is harmless, where the same principle was embodied, in plain and unmistakable language, in other instructions given." *Wheal-ton* v. *Doughty,* 116 Va. 566, 567, 82 S. E. 94.

The effect of the transaction with the Fort Branch Coal Corporation, upon which the defense relied on in this case is substantially bottomed, seems to be wholly misapprehended. In outline, it was this: On November 3d, the defendant informed the plaintiffs by letter that it had been unable to get the Smokeless Fuel Company to fill plaintiffs' order, and, therefore, the defendant would have to cancel its contract. To that communication the plaintiffs promptly replied that they expected the defendant to "live up to the contract and deliver the coal according to its stipulations." On November 17th, the defendant wrote that it had turned plaintiffs' order over to the Fort Branch Coal Corporation of Richmond, Virginia, which had assumed all responsibility as sellers and suppliers of the coal, and requested plaintiffs to address a letter to that corporation confirming defendant's action. Plaintiffs declined to accede to that proposal, but expressed their willingness for the defendant to fill their order with coal obtained from that corporation. Plaintiffs had never heard of the Fort Branch Coal Corporation and were unwilling to accept it as a substitute for the defendant. Besides, there were several material differences between the terms of the original contract and the one they were asked to accept by way of substitution. The fact that the plaintiffs had expressed their willingness to accept coal purchased by the defendant from the Fort Branch Coal Cor-

poration refutes the pretension of the defendant that it was beyond its power and control to fulfill its engagement. The record furnishes no explanation of the effort on the part of the defendant to escape personal liability on its contract by shifting the burden of it to another corporation, between which and the plaintiffs there were no contractual relations. Nor does it appear upon what theory the defendant assumes the right to invoke the doctrine of avoidable consequences against the plaintiffs in the circumstances narrated. It would, indeed, be a strange perversion of that doctrine if under it a defendant, who without sufficient cause had breached his contract, could compel a plaintiff, who was in no default, to enter into a contract for the delinquent's protection, the hazard of which he was unwilling to incur.

In the present cases damages are claimed for injury arising from a direct breach of the contract, namely, the loss of the value of the contract itself, and in such case the doctrine of avoidable consequences does not apply. The "rule has to do with consequential loss only." 1 Sedgwick on Damages (9th ed.) sec. 208-a.

The principle is summarized in Sutherland on Damages as follows: "The duty in such cases is not arbitrarily imposed on the injured party and exacted of him in all cases to do or amend the work of the other party or to finish it; but only when in view of all the circumstances of the particular case it is a reasonable duty which he ought to perform instead of passively allowing a greater damage. * * * Where the party whose duty it is primarily to do the work necessary to fulfill the contract * * has equal knowledge and opportunity, he alone may be looked to to fulfill that duty, and it will not avail him to say that the injured party might have lessened the damage by performing the duty for him." 1 Sutherland on Damages (4th ed.), sec. 88.

The doctrine announced by these eminent text-writers accords with the decision of this court in *Stonega Coal Company* v. *Addington,* 112 Va. 807, 73 S. E. 257, 37 L. R. A. (N. S.) 969. Keith, P., held in that case, that "When a

party is entitled to the benefit of a contract and can save himself from loss arising from a breach of it at a trifling expense, or with reasonable exertion, it is his duty to do it, and he can charge the delinquent with such damages only as, with reasonable endeavors and expense, he could not prevent." In that case it was shown that consequential damages from the breach of the contract could have been obviatèd by the purchase of a pipe wrench at a cost of $1.50 or $1.75 and repair work on the cylinder of a pump, which any mechanic could have done in a couple of hours. Judge Keith illustrates the principle by decisions of other courts. Thus, it was held in a Massachusetts case, where it appeared that the plaintiff could have avoided injury to his crops from trespassing cattle by repairing a breach in his fence made by the defendant, it was his duty to repair. So, where one throws a stone and breaks a window, and the owner, after notice, suffers the window to remain without repairing a great length of time, he cannot recover damages when the rain beats in and injures valuable pictures and other articles. The principal case and the illustrations show that the doctrine applies to consequential damages and not to direct damages flowing from the breach of the contract.

The instructions given by the court (which will be reported with the case), we think, fully and fairly submitted the law of the case to the jury, and the evidence was quite sufficient to sustain their verdict.

We are of opinion that the court did not err in overruling the motion for a new trial, and the judgment must be affirmed.

*Affirmed.*