## Richmond

ATLANTIC COAST LINE RAILROAD COMPANY V. SOUTHERN
OIL AND FEED MILLS, INC.,

*and*

WALKER D. HINES, DIRECTOR-GENERAL OF RAILROADS, V.
SOUTHERN OIL AND FEED MILLS, INC.

March 17, 1921.

1. WATERS AND WATERCOURSES—*Railroads—Culverts—Duty of the Railroad.*—The degree of care and foresight which a railroad company should use in putting a pipe under its roadbed to carry off water to avoid flooding adjacent landowners is that which an ordinarily prudent man would exercise under the conditions and circumstances existing at the time the pipe is put in.

2. WATERS AND WATERCOURSES—*Railroads—Culverts—Duty of the Railroad—Pipe Adequate at First, Afterwards Becoming Inadequate.*—A railroad company's duty to avoid the flooding of the lands of adjacent landowners is not fully and finally discharged by the duly careful original construction of a pipe under its roadbed reasonably adequate at the time of its installation; and an instruction to the effect that if such care was used by the company it would not be liable for damage from the inadequacy of the pipe, unless and until such inadequacy was affirmatively brought to its attention in some notice given by or on behalf of the complaining landowner, would be erroneous.

3. WATERS AND WATERCOURSES—*Railroads—Culverts—Duty a Continuing One.*—The duty of a railroad company with respect to culverts to take care of surface water coming through a natural drain does not end with the original installation, but is a continuing one. Thus, if a culvert was originally too small, or has become inadequate by reason of changed conditions in the watershed, which changed conditions were open and obvious to the railroad, it is the railroad's duty to enlarge the culvert.

4. RAILROADS—*Waters and Watercourses—Instructions—Cure of Error in One Instruction by Another.*—In an action against a railroad for flooding lands, the court instructed the jury that if, from the evidence, they believed that the direct cause of the

damage was the want of proper construction of a culvert under defendant's tracks, they should find for the plaintiff.

*Held*: That, while this instruction, standing alone, might have been objectionable as being susceptible of the meaning that any "want of proper construction of the said culvert" would have rendered the defendant liable, yet the objection was cured by the instruction immediately following, which told the jury plainly the decree of care and foresight which defendant railroad should have used in constructing its culvert.

5.   RAILROADS—*Director General—Liability.*—The Director General of Railroads had no more right to permit a faultily constructed culvert to operate injuriously to property owners than the railroad itself.

Error to judgments of the Circuit Court of the city of Suffolk, in actions of trespass on the case. Judgments for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*Wm. B. McIlwaine* and *Bernard Mann,* for the plaintiffs in error.

*Lewis & Harris,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a writ of error to two judgments in favor of the Southern Oil and Feed Mills, Inc., one thereof against the Atlantic Coast Line Railroad Company and the other against the director-general operating that company's lines. The judgments were rendered in two actions at law instituted at the same time by the Southern Oil and Feed Mills, Inc., against the Atlantic Coast Line Railroad Company and the director-general, respectively, and both actions were tried together by consent.

The damages sought to be recovered were alleged to have resulted from an insufficient pipe or culvert under the rail-

road, causing the damming or ponding of water on the plant and property of the plaintiff.

Some time prior to June, 1915, the plaintiff leased from the owners, L. F. Bain & Son, the certain building and premises in the city of Suffolk which for some years previous had been used as a warehouse for the storage of peanuts, and still earlier as a planing mill. This property, as described in the declaration and as shown by the evidence, was "near to and adjoining a certain gorge, drain, ditch and water course which forms the southern boundary of the said premises and has for all time, as far as is known, constituted a natural drain for the collection and passage of water, which flows from, over and under a large area of land in the said city of Suffolk, including the premises of the plaintiff and numerous accepted streets in said city, to-wit: Johnson avenue, Culloden street, Spruce street, Tynes street and Oak avenue, to, by, through and beyond the same and in an easterly direction under the tracks of the Norfolk-Southern Railroad Company, the tracks of the Southern Railway Company, thence to the railroad right of way property of the Atlantic Coast Line Railroad Company, through which last-mentioned right of way property said gorge, drain, ditch and water course passed before the said Atlantic Coast Line Railroad Company constructed its right of way and tracks thereon."

To be a little more specific, it appears from the allegations and proof that the plaintiff's property was situated immediately west of three parallel lines of railroad tracks, the first and nearest being the Norfolk-Southern, the second the Southern, and the third the Atlantic Coast Line. These tracks had been there for twenty-five or thirty years, having been constructed in point of time in the order last above named. From the time of their original construction until about the year 1908 the Norfolk-Southern and Southern Railroads maintained an eighteen-inch pipe

under their tracks connecting with the drain or gorge above mentioned, making a continuous pipe line of that size under both tracks for a distance of 117½ feet. This pipe line emptied into an opening or manhole between the tracks of the Southern and the tracks of the Atlantic Coast Line, and from this hole the latter company maintained a fifteen-inch pipe under its tracks for a distance of about eighty feet to a point east of the tracks, where it emptied on the surface. All of the tracks were on a fill elevated very considerably above the bottom of the aforesaid drain or gorge.

In about the year 1908 the Norfolk-Southern Railroad Company substituted a, thirty-inch pipe in place of the eighteen-inch pipe under its tracks, and shortly thereafter the Southern Railway Company made a similar change. The Atlantic Coast Line, at a much later date, did the same thing, but not until after the damage herein sued for had been sustained.

These two actions were for damages sustained in four several floods in which the water backed up on the plaintiff's property, one thereof occurring in June, 1915; one in March, 1917; one in April, 1918, and one in June, 1918, the last two after the railroads had been taken over by the director-general.

The first assignment of error is to the action of the court in refusing to set aside the verdict of the jury as being contrary to the law and the evidence.

Under this assignment, the argument of the defendants is addressed solely to the proposition that the evidence is insufficient from the plaintiff's standpoint to support the verdicts, their main contention being summed up in their opening brief, as follows: "In conclusion, it is evident that the floods of 1915, 1917 and 1918, four in number, were caused by some one of the pipes under the railroad embankment becoming stopped up by debris, etc., and, as,

we have seen, it is just as probable, if not more so, that this stopping was at the mouth of one of the other pipes referred to in the evidence as that it occurred at the mouth of the A. C. L. pipe."

It would serve no good purpose to review the evidence in detail. We have examined it scrupulously, and are fully satisfied that it was amply sufficient to warrant the jury in finding that the damage was caused by the insufficient size of the pipe line under the Atlantic Coast Line track.

The second assignment of error relates to the giving and refusing of instructions. The plaintiff asked for five instructions, all of which were given. The defendant, Atlantic Coast Line, asked for eleven, seven of which were given, and the defendant, director-general, asked for thirteen, nine of which were given. To the action of the court in giving the five instructions for the plantiff and in refusing four of those asked for by the railroad company and four asked for by the director-general, the defendants noted a general exception, but only five of the instructions, as given or refused, are discussed or referred to in the assignments of error, and we shall confine ourselves to a consideration of the latter.

[1, 2] Instruction No. 4, asked for by the railroad company and refused, was as follows: "That the degree of care and foresight which the Atlantic Coast Line Railroad Company should have used in putting a pipe under its road-bed to carry off the water in question was that which an ordinarily prudent man would have exercised under the conditions and circumstances existing at the time that said pipe was put in, and if the jury believe from the evidence that such care was used by said company, and further believe from the evidence that not until after the two floods complained of in the declaration, to-wit, the one in June, 1915, and the one in March, 1917, was it brought to said company's attention that the pipe that had been installed

by it was believed to be the source of damage to the plaintiff, then the jury cannot find a verdict against said company in this case."

The first part of this instruction accurately defined the railroad company's duty in respect to the original installation of the pipe line. *American Locomotive Co.* v. *Hoffman,* 108 Va. 363, 370, 61 S. E. 759, 128 Am. St. Rep. 953. The latter part of the instruction, however, was inappropriate and misleading. To have given it would have been equivalent to telling the jury that the company's duty was fully and finally discharged by the duly careful original construction of the pipe, unless and until the inadequacy of the pipe was affirmatively brought to its attention in some notice given by or on behalf of the plaintiff. This is not the law.

[3, 4] There is evidence tending to show that the smaller pipe was reasonably adequate for some time after its installation, but, be that as it may, it is clear that in process of time the drainage area was subject to material changes, particularly by reason of the growth of the city of Suffolk, the improvement of its streets, etc., and that these changes augmented the flow of water into the culvert in question. The changes referred to were such as to be reasonably anticipated; they were readily apparent as they progressed, and their probable effect on the watershed was as open and obvious to the railroad company as they were to the owners of the property liable to be affected thereby. Both the Norfolk-Southern and the Southern Railroad Companies had installed larger pipes some years before the damage here complained of had occurred. Whether this change was made because the pipe was originally too small or because it had been rendered inadequate by changed conditions, may not be entirely clear, but it convincingly appears that the change was in fact made because the pipe was too small. The Atlantic Coast Line, in all reasonable

probability, knew of the change made by the other roads, but whether so or not, the conditions making it reasonably necessary were open to that company. The duty of a railroad company with respect to culverts to take care of surface water coming through a natural drain does not end with the original installation, but is a continuing one. 3 Farnham on Waters, p. 2669; *Indiana I. & I. R. Co.* v. *Patchett,* 59 Ill. App. 251; 27 R. C. L., p. 1148, 1149; *Soules* v. *Northern Pacific R. Co.,* 34 N. D. 7, 157 N. W. 823, L. R. A. 1917A, 501, 509. Defendants' instruction No. 4 was properly refused.

Complaint is made of plaintiff's instruction No. 4, given over defendants' objection, as follows: "The court instructs the jury that if, from the evidence, they believe that the direct cause of the alleged disaster was the want of proper construction of the said culvert under the tracks of the Atlantic Coast Line Railroad Company, then they shall find for the plaintiff."

It is said, first, that this instruction ignores the degree of care with which the defendants are chargeable as defined in the *Hoffman Case, supra.* It appears, however, by reference to the plaintiff's instruction No. 5 that the court told the jury plainly "that the degree of care and foresight which the defendants should have used in constructing their culvert was in proportion to the nature and magnitude of the injury which would likely have resulted from the water being backed upon the plaintiff's property, and it should have been that care and prudence which a reasonably discreet and cautious individual would or ought to have used for the purpose of protecting himself from injury." This, as we understand it, is substantially the rule as to the degree of care laid down by the *Hoffman Case,* and while it would have been proper to have made a similar statement in instruction No. 4, there was no necessary conflict between the two, and, when read together, they constitute

42

a correct statement of the law.   Instruction No. 4, standing alone, might have been objectionable as being succeptible of the meaning that any "want of proper construction of the said culvert" would have rendered the defendants liable, but instruction No. 5, immediately following it, cured the objection.   *Miller* v. *Newport News*, 101 Va. 432, 44 S. E. 712; *C. & O. Ry. Co.* v. *McCarthy*, 114 Va. 181, 188, 76 S. E. 319; *Eastern Export Corporation* v. *Beazley*, 121 Va. 4, 9, 92 S. E. 824.

[5]   Another objection urged against plaintiff's instruction No. 4 is that it applied to both defendants, whereas the director-general had nothing to do with the original construction.   It is a sufficient answer to this objection to say that both cases were heard together, and if there were anything in the objection here urged, the jury would not have been misled, because they fully understood that the proceeding, in so far as it affected the director-general, was aimed at the condition and maintenance of the road during his administration.   As a matter of fact, however, the instruction was right, and is free from objection as to both defendants.   The director-general had no more right to permit a faulty construction to operate injuriously to property owners than the company itself.   In this respect he stood in the company's shoes.

Instructions 1, 2, 3 and 5, given at the request of the plaintiff, are objected to on behalf of the director-general of railroads on substantially the same ground as the second objection to plaintiff's instruction No. 4 above.   For the reasons stated in the discussion of that instruction, there was no error in giving the three here in question, and no merit in the objection thereto.

The judgments complained of are affirmed.

*Affirmed.*