## Richmond.

## STONEGA COKE AND COAL COMPANY V. ADDINGTON.

### November 16, 1911.

1. DAMAGES—*Measure—Avoidable Consequences—Trifling Cost.*—
   Where a party is entitled to the benefit of a contract and can
   save himself from a loss arising from a breach of it at a
   trifling expense, or with reasonable exertion, it is his duty to
   do it, and he can charge the delinquent with such damages
   only as with reasonable endeavors and expense he could not
   prevent. A plaintiff cannot recover for avoidable conse-
   quences. If a defendant contracts, for instance, to furnish
   the plaintiff "pumps, pipes and wrenches" necessary to do a
   piece of work and fails to do so, but these articles can be
   readily obtained for a trifling cost, the measure of damages
   to the plaintiff for this breach of contract is the cost to the
   plaintiff of such appliances, and not the value of the labor done
   by the plaintiff in consequence of defendant's failure to fur-
   nish them.

2. CONTRACTS—*Performance—Waiver.*—Where a defendant has
   failed to furnish appliances to drain a mine, as he had con-
   tracted to do, but they are readily obtainable at a trifling cost,
   the plaintiff may procure them and proceed with the work,
   or, if that cannot be done, he may insist upon compliance by
   the defendant with his contract. If he does neither of these
   things, but informs the defendant that he will bail the water
   out, he must be taken to have waived his right under the con-
   tract.

3. INSTRUCTIONS—*Contradictory—Waiver.*—If the facts stated in an
   instruction, of themselves, constitute a waiver of a term of a
   contract, it is error for the trial court to instruct the jury
   that, if they believe those facts, and that the plaintiff *"waived
   his right"* to have that term of the contract performed, they
   must find for the defendant, for that is equivalent to telling
   the jury that the facts stated did not constitute a waiver.

Error to a judgment of the Circuit Court of Wise county

in an action of assumpsit.    Judgment for the plaintiff.    Defendant assigns error.

*Reversed.*

The opinion states the case.

*Bullitt & Chalkley,* for the plaintiff in error.

*Bond & Bruce,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

C. M. Addington brought an action of assumpsit in the Circuit Court of Wise county against the Stonega Coke and Coal Company, in which he states that at the request of the defendant he had agreed to drive two entries into its mines in the county of Wise for a distance of seventeen hundred feet, to mine out all the "break-throughs," and to do all the temporary timbering, and to remove and clean up all the slate, dirt and refuse in said entries and "break-throughs," except when there was a fall of slate more than twelve inches in thickness; to drive the headings of the usual width and take out all of the coal therein to the roof unless the entry could be driven six feet in heighth and leave a roof or top of coal at least twelve inches thick, and in that event the entry was to be left six feet in heighth; and to load into mine cars all of the coal taken out of said entries and "break-throughs" in driving the same as aforesaid; and the defendant then and there undertook and agreed with the plaintiff to furnish and provide at the drift mouth of said entries all props, cross-beams and other timbers necessary to support the roof of said mine, and all ties, spikes, partings and switches, and other material and appliances necessary to make the said track, and all pumps, pipes and wrenches and tools and appliances necessary to

pump or siphon the water out of said mine, and to furnish all cars necessary to load the coal and other material taken from said entries, and to haul all ties, props, rails and timber into said entries, and haul out all loaded cars as fast as the same were loaded, and to pay the plaintiff four dollars per lineal yard for each yard of entry and "break-throughs" driven by him as aforesaid, and to pay to him on its regular pay-day in each month all amounts due to him for the work done under and in pursuance of said agreement for the preceding month. The plaintiff avers that he always, from the time of making the agreement, performed all things on his part to be performed; that he purchased and provided himself with tools, materials and supplies necessary to do said work, and did mine and drive a considerable portion of said entries and "break-throughs," or the most difficult and expensive part thereof, and did bail and haul out of said mine large quantities of water; and that he has always been ready, able, willing and anxious to perform and complete the whole of said work in pursuance of his agreement; that the defendant not regarding its promise, but intending to injure the plaintiff did not perform the agreement on its part, but failed and refused to furnish and provide the plaintiff with props, cross-beams and other timbers necessary to support the roof of said mine, and ties, rails, spikes, partings, switches and other material and appliances necessary to make the said track, and pumps, pipes, wrenches, tools and appliances necessary to pump or siphon the water out of said entries and "break-throughs," and to furnish cars necessary to load said coal and other material taken from said mine, and to haul the timbers, props, rails and ties into the said mine, and to haul out the loaded cars; and that in November, 1908, the defendant would not permit or suffer the plaintiff to complete his work, and then and there hindered and prevented him from doing so, and discharged the plaintiff from any

102

further performance or completion of his said agreement; to the damage of the plaintiff $2,000.

The plaintiff's bill of particulars is for damage by reason of the failure of the defendant to furnish pipes, wrenches and pump, $200.00; and for profit on contract, $1,800.00. The defendant filed a bill of particulars, which is nothing more than an amplification of the plea of non-assumpsit.

The case was submitted to a jury, which found a verdict in favor of the plaintiff for $800, upon which the court entered judgment, and the case is before us upon a writ of error awarded the defendant.

The first error assigned is that the court erred in giving to the jury a certain instruction asked for by the plaintiff, which is as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff and defendant made the agreement as alleged in the declaration, and that the plaintiff has complied with all the requirements of the contract on his part to be performed, and that there was a material breach of the contract by the defendant, then they must find for the plaintiff.

"The court further tells the jury that if they find for the plaintiff they shall assess such damages as in their opinion he has sustained, and in assessing the damages they shall take into consideration the value of any labor which the plaintiff has done by reason of the failure of the defendant to furnish pipe, wrenches and pumps if they believe that defendant was to furnish same, and they shall allow him also any profit which in their opinion the plaintiff would have made if he had been permitted to complete the contract."

The defendant, in lieu of this instruction, asked the court to tell the jury, that "although they believe from the evidence that the defendant agreed to furnish the plaintiff with pump, pipes and wrenches for the purpose of syphoning

the water out of the mine, and did not furnish the same, or did not furnish pump and pipe which would properly do the work, yet if the plaintiff continued to work for several months after the defendant had failed to furnish the said appliances, and stated to the company that he would bail the water out, he cannot now claim that the said failure to furnish the said pump, pipe and wrenches was a violation of the contract on defendant's part, and cannot recover damages on account thereof."

The court refused to give this instruction as asked, and modified the same by inserting therein, after the words "bail the water out," the following words, viz.: "and waived his right to have said appliances furnished him, then," and gave said instruction as so modified.    To all of which the defendant excepted.

The giving of the first instruction, considered in connection with the facts in this case, presents an interesting question of law.    It is shown by the plaintiff's own evidence that, conceding that the defendant was bound to furnish pumps, pipes and wrenches, and that it failed to comply with its agreement in this respect, they could have been purchased for a very small sum; and the contention of the defendant is that the cost to the plaintiff of such appliances is the true measure of the damages to which he is entitled by reason of the failure of the defendant to furnish them in accordance with its contract, and not the "value of any labor which the plaintiff has done by reason of the failure of the defendant to furnish pipes, wrenches and pumps."    In other words, the defendant invokes the familiar doctrine, that the plaintiff cannot recover for avoidable consequences.

This subject is treated at large in Sedgwick on Damages, (8th ed.), secs. 201, 202 and 205, and numerous cases are cited which illustrate the doctrine.

In *Miller* v. *Mariner's Church,* 7 Me. 51, it is said, that "the delinquent party is holden to make good the loss occa-

sioned by its delinquency. But his liability is limited to direct damages which, according to the nature of the subject, may be contemplated or presumed to result from his failure. . . . If the party entitled to the benefit of a contract can protect himself from a loss arising from a breach, at a trifling expense or with reasonable exertions, he fails in social duty if he omits to do so. For example, a party contracts for a quantity of bricks to build a house, to be delivered at a given time, and engages masons and carpenters to go on with the work. The bricks are not delivered. If other bricks of an equal quality and for the stipulated price, can be at once purchased on the spot, it would be unreasonable, by neglecting to make the purchase, to claim and receive of the delinquent party damages for the workmen, and the amount of rent which might be obtained for the house if it had been built."

"So in trespass in Massachusetts, it appearing that the defendant had broken down the plaintiff's fence in November, but that the plaintiff did not repair the breach till May, in consequence of which cattle got in and destroyed the crop of the next year, and the claim being for the loss of the subsequent year's crop, as well as the expense of repairing the fence, the Supreme Court said:

" 'In assessing damages, the direct and immediate consequences of the injurious act are to be regarded, and not remote, speculative and contingent consequences, which the party injured might easily have avoided by his own act. Suppose a man should enter his neighbor's field unlawfully, and leave the gate open; if, before the owner knows it, cattle enter and destroy the crop, the trespasser is responsible. But if the owner sees the gate open, and passs it frequently, and wilfully and obstinately, or through gross negligence, leaves it open all summer, and cattle get in, it is his own folly. So, if one throw a stone and break a window, the cost of repairing the window is the ordinary measure of

damage.   But if the owner suffers the window to remain without repairing a great length of time after notice of the fact, and his furniture, or pictures, or other valuable articles, sustain damage, or the rain beats in and rots the window, this damage would be too remote.' "

And in section 205 (Sedgwick, *supra*) it is said, that "The rule applies both in contract and tort, and illustrations may be drawn from every branch of the law."

See also 13 Cyc. p. 71: "Where an injured party finds that a wrong had been perpetrated on him, he should use all reasonable means to arrest the loss.   He cannot stand idly by and permit the loss to increase, and then hold the wrong-doer liable for the loss which he might have prevented.   It is only incumbent upon him, however, to use reasonable exertion and reasonable expense, and the question in such cases is always whether the act was a reasonable one, having regard to all the circumstances of the particular case."   See *Factors & Traders Ins. Co.* v. *Werlein,* 11 L. R. A. 361; 1 Sutherland on Damages, 152.

In *Warren* v. *Stoddart,* 105 U. S. 224, 26 L. ed. 1117, the rule is thus stated: "Where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it, and he can charge the delinquent with such damages only as with reasonable endeavors and expense he could not prevent."

Authorities upon this subject might be multiplied to an almost unlimited extent, but those we have cited are deemed sufficient.

The testimony shows that the pump worked well at first; that it afterwards got stopped up with coal by reason of not having a nozzle attached to it.   One of the witnesses for the plaintiff was asked:

"Q. How much did a nozzle cost?   A. Don't know how

much it would have cost.    Man could have took a tin can and made one.

"Q. You just preferred to work it along and let it get stopped up with coal?    A. We was working by the day, and had to work according to Mr. Addington's orders."

And then, with reference to the wrench, the witness was asked:

"Q. How much would it have cost to have gotten a wrench?    A. Not a great deal.

"Q. How much would a pipe wrench have cost?    A. A large one maybe $1.50 or $1.75, something like that."

Another complaint was that the cylinder of the pump was not properly packed.    The question was asked the witness:

"Q. That you could have taken out and packed very easily?    A. Yes, sir, a mechanic could have taken it out and packed it.

"Q. How long would it have taken to have done that?    A. Oh, a couple of hours."

We think these facts clearly bring the case within the operation of the principle we have discussed, and that it was error to give the instruction asked for by the plaintiff.

The instruction asked for by the plaintiff in error, defendant in the court below, which was refused as asked for and given with an amendment, is predicated upon the theory that the defendant agreed to furnish the plaintiff with pumps, pipes and wrenches for the purpose of syphoning the water out of the mine; that it did not furnish the same, and did not furnish appliances which would properly do the work; but that plaintiff continued to work for several months after such failure upon the part of the defendant, and stated to the company that he would bail the water out.    Then the instruction, as originally prepared, told the jury that the plaintiff could not afterwards claim damages for a violation of the contract on the part of the defendant to furnish pumps, pipes and wrenches.

Plaintiff could have furnished pump, pipes and wrenches at a trifling cost, or if that could not be done, he might have insisted upon a compliance by the defendant with its contract to furnish them; but having done neither of these things, and having informed the company that he would bail the water out, if the jury believed that such was the fact, he must be taken to have waived his right under the contract; for *non constat* plaintiff in error, without this statement on the part of defendant in error, would itself have furnished the needed appliances. If the facts stated in this instruction constitute a waiver, then plainly it was error after the words "he would bail the water out," to add the words, "and waived his right to have said appliances furnished him, then," for that was equivalent to telling the jury that the facts stated did not constitute a waiver.

As the case has to be reversed for error in instructions, we shall not consider the motion to set aside the verdict as contrary to the evidence.

The judgment is reversed, the verdict set aside, and the cause remanded for a new trial to be had not in conflict with the views herein expressd.

*Reversed.*