Syllabus.

𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

CITY OF RICHMOND V. CHEATWOOD.

June 16, 1921.

1. FLOODS—*Extraordinary Floods—Evidence—Case at Bar.*—In the Instant case the evidence was sufficient to warrant the jury in finding that the flood or freshet which caused the damage to plaintiff's property was not such an extraordinary and unusual one as to entitle the defendant city to immunity against the resulting damage, due to the insufficiency of the arches under which a stream crossed the streets of the city to carry off the water.

2. WATERS AND WATERCOURSES—*Obstruction of Flow—Culverts and Arches—Floods—Act of God.*—No person or corporation has a right to construct a culvert over a natural watercourse in such manner as to obstruct the flow of the stream and throw its waters back on another owner's property to its injury, and the culvert or opening must be sufficient to accommodate, not only the natural and normal flow of the stream, but such abnormal and excessive flow as may reasonably be anticipated in times of high water and flood. There is no duty, however, to provide for floods so unusual and extraordinary as to bring them within the category of an "act of God."

3. FLOODS—*Definition of Extraordinary Flood.*—An extraordinary flood, for the injury caused by which in combination with an obstruction placed in the stream the owner of the obstruction is not liable, is one which men of ordinary prudence would not have anticipated and provided for. A flood is not extraordinary which is such as residents of the neighborhood might expect from their observation.

4. FLOODS—*Extraordinary Flood—Question for Jury.*—Where the question was whether the evidence conclusively showed that the damage complained of was caused by such an extraordinary freshet as to exempt defendant from liability, and there was evidence to sustain the contention of the defendant on this point, and also evidence tending materially to show that the freshet did not fall within the category of an act of God, the question was one for the jury.

5.  WATERS AND WATERCOURSES—*Damages—Injuries to Property by Flood Caused by Obstruction.*—In an action for damages for flooding lands, plaintiff in his testimony, without objection, placed a valuation on the building and stated the market value of the property before and after the injury thereto. Defendant introduced testimony that the market value of the building was less than that given by the plaintiff, but introduced no testimony as to the value of the property as a whole, nor as to the value of the lot independent of the building either before or after the flood.

    *Held:* That from the standpoint of the plaintiff, the evidence was sufficient to establish the amount fixed by the verdict.

6.  WATERS AND WATERCOURSES—*Damages—Injuries to Property by Flood Caused by Obstruction—Appeal and Error—Objection in Lower Court.*—Plaintiff, in his testimony, based his estimate of the damage to his property upon the difference between the value of the property before and after the injury. Whether or not this was a proper rule by which to measure the damage, as no objection was offered to that method of proof, and no countervailing evidence was produced, the objection cannot be availed of upon appeal.

7.  DAMAGES—*Minimizing Damages—Floods—Case at Bar.*—Where plaintiff's property was damaged by two different floods, it was claimed that plaintiff was not entitled to recover for damages to the property from the second flood, because after the first flood plaintiff did not build a retaining wall in anticipation of another flood.

    *Held:* There was no merit in this claim, as this would not be minimizing the damage resulting from a past wrong, but providing against a separate and future wrong.

8.  DAMAGES—*Minimizing Damages—General Rule.*—A defendant is liable only for the natural and proximate consequences of his breaches of contract or unlawful acts, and if the plaintiff has rendered these consequences more severe to himself by some voluntary act from which it was his duty to refrain, or by his neglect to reasonably exert himself to limit or minimize the injury, and thereby suffers additional injury from the defendant's original wrong, evidence is admissible in mitigation to ascertain the extent to which the damages claimed for such original act of the defendant are attributable to such subsequent act or omission of the plaintiff.

9.  DAMAGES—*Minimizing Damages—Plaintiff Not Bound to Anticipate Further Injury.*—While the plaintiff is bound to reasonably exert himself to minimize injury, he is not bound to antici-

Syllabus.

pate and provide against new and further violations of contract or wrongful acts which the defendant himself could avoid.

10. FLOODS—*Extraordinary Flood—Flood and Negligence Combining Instructions.*—In an action against a city for want of ordinary care in maintaining arches or outlets for a natural watercourse over which it had constructed certain of its streets, defendant asked for an instruction that if the jury believed from the evidence "that all or any part of the damage complained of was caused by an extraordinary" flood, the jury must find for the defendant as to all damages so caused. The trial court amended this instruction so as to read, if "the damage complained of was *solely and proximately* caused by an extraordinary" flood, the jury must find for the defendant as to all damages so caused.

*Held:* That the addition of the words "solely and proximately" was proper.

11. NEGLIGENCE—*Act of God—Injury Caused by Negligence and Act of God.*—When the negligence of a defendant mingles with an act of God in the production of an injury, the latter does not constitute a defense.

12. WATERS AND WATERCOURSES—*Inadequacy of Outlet—Knowledge of Inadequacy.*—In an action against a city for want of ordinary care in maintaining arches or outlets for a natural watercourse over which it had constructed certain of its streets, an instruction which, in effect, told the jury that if the arches were originally adequate, the city could wait until experience had demonstrated their inadequacy by other floods prior to that causing the injury complained of, before making any changes in the arches, would be erroneous, if the city could reasonably be charged with knowledge that its own operations had so materially increased the flow to be expected in times of flood as to render the outlets insufficient.

13. WATERS AND WATERCOURSES—*Culverts and Outlets—Outlets Becoming Inadequate.*—The duty of a person or corporation with respect to culverts or outlets to take care of surface water coming through a natural drain does not end with the original installation, but is a continuing one, to be exercised with due regard to changed conditions affecting the flow of water to be acommodated by the culvert or outlet.

14. WATERS AND WATERCOURSES—*Obstructions—Flooding Property — Municipal Corporations — Appeal and Error — Harmless Error.*—In an action against a city for want of ordinary care in maintaining arches or outlets for a natural .watercourse over which it had constructed certain of its streets, an instruc-

tion for the plaintiff stating the general powers and duties of the city with reference to the bed of the creek and the protection of abutting property owners in general, may have gone further than was either necessary or proper, but it was so plainly directed in its main purpose to the plaintiff's case and to conditions affecting the bed of the stream under the streets and the capacity of the arches, as to have been free from any probability of error prejudicial to the defendant.

15. NEGLIGENCE—*Ordinary Care—Definition.*—Ordinary care depends upon the character of the work to be done. Where one is charged with the conduct of matters requiring special skill and knowledge, it is not reasonable care to depend upon the judgment of unskilled persons.

16. INSTRUCTIONS—*Measure of Damages—Conforming to Proof.*— Plaintiff is entitled to an instruction upon the measure of damages which conforms to the method of proof adopted by him without objection or contradiction on the part of the defendant, even though it be conceded that upon proper objection some other rule or method should have been used.

17. DOCUMENTARY EVIDENCE — *Action Against City for Flooding Lands—Reports and Blueprints of City Engineer.*—In an action against a city for want of ordinary care in maintaining arches or outlets for a natural watercourse over which it had constructed certain of its streets, the reports and blueprints of the city engineers for a number of years, relating to the creek and its requirements, are admissible in evidence, for the purpose of bringing home to the city knowledge of the fact that the culverts or arches were too small.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for plaintiff. Defendant appeals.

*Affirmed.*

The opinion states the case.

*H. R. Pollard* and *Geo. Wayne Anderson,* for the plaintiff in error.

*Scott & Buchanan* and *Gunn & Matthews,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This action was brought by W. A. Cheatwood against the city of Richmond for damages resulting to his property from an overflow of Shockoe creek, a natural watercourse flowing through the city. There was a verdict and judgment below in favor of Cheatwood, and the city brings the case here upon a writ of error.

The evidence was voluminous, and we cannot undertake to set it out in very great detail. For the purposes of this opinion it will suffice to say that from the standpoint of the plaintiff, and as supporting the verdict, the evidence either showed, or materially tended to show, the following facts: Shockoe creek is a natural stream, running through the northern and eastern part of the city of Richmond, discharging into James river just below Dock street. With its tributaries, Bacon Quarter branch, Cannon's Branch and Griffin's branch, having a drainage area of about ten square miles, this creek drains the northern, western and eastern sections of the city, extending from the new reservoir and the boulevard on the west to Church Hill and Chimborazo park on the east, embracing some very highly improved sections, and constituting a very large part of the entire area of the city.

The territory lying within the drainage area, formerly more or less flat and open country over which the surface waters in times of heavy rain spread and ponded, has been converted into city lots and has become a thickly settled and highly improved section of the city, with paved streets and alleys, gutters and sewers constructed by the city. In the course of years the bed or channel of the creek, under the arches hereinafter mentioned, has materially filled up.

Shockoe creek, in its course to the river, crosses Marshall, Broad, Union, Franklin, Main, Cary and Dock streets,.

under arches built and maintained by the city of Richmond. These arches, constructed seventy or more years ago, were adequate at the time of their construction, so that under the conditions existing then and for some time thereafter the waters naturally draining into the creek in times of storm and rain were carried off through the arches aforesaid, without injury to private property along the creek.

The effect of the change of the drainage area of Shockoe creek, brought about by the covering of the surface of the streets and alleys with paving impervious to water, and the construction of gutters and drains discharging into Shockoe creek, has been to gather together the storm waters falling within the drainage area and to throw them with a greatly accelerated flow through the arches or outlets to such an extent as that the arches were insufficient to carry them off.

Notwithstanding these changed conditions, the city has made no corresponding change or alteration in the arches aforesaid.

The city was not only charged, by reason of improvements which it made, with knowledge of the changed conditions above pointed out, but there had been repeated reports and recommendations made to it by its engineering department, which may fairly be construed as implying that the arches had become inadequate to carry off the water to be reasonably expected in times of storm and flood. This latter conclusion from the evidence is strongly challenged by counsel for the city, but we think the conclusion is justified.

On the 1st day of August, 1915, there was a very severe rain storm, followed by another two days later, in the area drained by Shockoe creek and its tributaries, resulting in heavy floods. The arches aforesaid, particularly that at Main street where the plaintiff's property was situated,

11

were insufficient to carry off the waters, and as a result the property of the plaintiff was flooded and greatly damaged, his two and a half story building with a half cellar beneath being wrecked and destroyed. And, in July, 1916, there was another rain storm and freshet in the same territory, which washed away about one-fourth of the lot on which the building formerly stood.

The total damage claimed in the declaration was $12,000. The verdict was for $10,000, and the trial court awarded a judgment for that amount.

[1] It is earnestly contended on behalf of the city, and this was its main defense, that the rain storm which caused the freshet in August, 1915, was so unusual and extraordinary that there was no duty on the part of the city to anticipate the same. We shall consider later what it takes to constitute an extraordinary flood, in such sense as to render the city exempt from liability for damages resulting therefrom. With reference to the evidence, we content ourselves by saying that upon a careful consideration thereof we are of opinion that it was sufficient to warrant the jury in finding that the flood or freshet was not such an extraordinary and unusual one as to entitle the defendant to immunity against the resulting damage.

In deciding this case, we need not go very far afield in the discussion of relative rights of adjacent land owners and upper and lower land owners with respect to surface waters. The authorities upon this general subject are not uniform, the main conflict therein being due to the difference between the two distinct theories upon which the rules known as the "civil law rule" and "common law rule," respectively, are founded. See 3 Farnham on Waters, sec. 889 *et seq.; N. & W. R. Co.* v. *Carter,* 91 Va. 587, 591, 22 S. E. 517.

It is to be carefully observed in this case, however, that the gravamen of the complaint, as distinctly shown by the

declaration and the general course of the evidence, is not
that the city exceeded its common law and legislative rights
and authority in the plan of its operations, but that the
passageways which it undertook to provide and maintain
as a part of that plan were inadequate, and that such in-
adequacy was due to negligence on the part of the city
and was the proximate cause of the injury. This, in its
final analysis, is the decisive point in the case. It is con-
ceded that the passageways were sufficient when con-
structed, but the plaintiff's contention is that they had been
at and before the time of the injury complained of, with the
actual or constructive knowledge of the city, allowed to be-
come insufficient by reason of conditions brought about by
it in the construction of streets, gutters and sewers, which
necessarily increased the volume and accelerated the flow
of water through the arches.

[2] The law is perfectly well settled that no person or cor-
poration has a right to construct a culvert over a natural
watercourse in such manner as to obstruct the flow of the
stream and throw its waters back on another owner's
property to its injury, and the culvert or opening must be
sufficient to accommodate, not only the natural and normal
flow of the stream, but such abnormal and excessive flow
as may reasonably be anticipated in times of high water
and flood. There is no duty to provide for floods so un-
usual and extraordinary as to bring them within the cate-
gory of an "act of God."

[3] In *Director General* v. *Bryant's Administrator*, 127
Va. 651, 661, 105 S. E. 389, this court approved the defini-
tion of an extraordinary flood found in 2 Farnham on Wa-
ters, section 577a, and we quote the whole of that section as
pertinent here: "An extraordinary flood, for the injury
caused by which in combination with an obstruction placed
in the stream the owner of the obstruction is not liable, is
one which men of ordinary prudence would not have antici-

pated and provided for. A flood is not extraordinary which is such as residents of the neighborhood might expect from their observations. The rule is stated in the Alabama court as follows: 'Floods such as from climatic and geographical conditions may reasonably be expected, whether of frequent or infrequent occurrence, must be taken into consideration in estimating hazards attending the obstruction of water-courses. The term "act of God," in its legal sense, applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them.' And that rule must be regarded as the proper one. The Illinois Court of Appeals held that extraordinary floods are those not oc-curring annually. But the mere fact that a flood does not occur annually will not make it an extraordinary one, if from the climatic conditions and the character of the coun-try it is likely to occur at any time. The question whether a flood is ordinary or extraordinary is in most cases for the jury."

Great reliance is placed by counsel for the city on the case of *American Loc. Co.* v. *Hoffman,* 105 Va. 347, 54 S. E. 25, 6 L. R. A. (N. S.) 252, 8 Ann. Cass. 773, where it was held that an instruction requiring the de-fendant "to so build said fence and watergate and construct said culvert as not to obstruct such extraordinary flow of water as the defendant might reasonably have expected would occasionally flow down Cannon's branch," imposed upon the defendant, American Locomotive Works, a higher degree of care and foresight in the construction of the cul-vert and watergate in question than the law imposes. But it is manifest upon a consideration of the opinion in that case that the instruction in question was condemned be-cause it was thought to be liable to have a misleading ef-fect in connection with the other instructions in the case.

The true import of the decision, as we interpret it, is shown in the second syllabus to the case as follows: "A lower riparian owner has no right to pen back or obstruct the flow of a watercourse so as to flood the lands of the upper owners. Where bridges, culverts and the like are constructed across watercourses by a lower proprietor, due care should be taken not to obstruct the natural flow, including such rises as are usually and ordinarily and reasonably to be anticipated at certain seasons of the year, but a lower proprietor is not bound to take precautions against extraordinary freshets which human sagacity cannot forsee nor human experience foretell."

[4] Under the first assignment of error it is insisted that the court ought to have set aside the verdict on the ground that it was contrary to the law and the evidence. The general rules of the law governing the case have already been stated. The important question under this assignment is, whether the evidence conclusively shows that the damage complained of was caused by such an extraordinary freshet as to exempt the city from liability. Our conclusion is that while there was much evidence to sustain the contention of the city on this point, there was, nevertheless, evidence tending materially to show that the freshet in August, 1915, did not fall within the category of an act of God, and that, therefore, the question was one for the jury. It was submitted to them upon instructions which fairly presented the defendant's theory of fact as to the character of the flood. In an instruction asked for by the defendant the trial court said: "The jury are the judges of the character of the storm or freshet from the evidence, but the burden of proof is on the defendant to show that the flood or freshet was extraordinary and unusual." The verdict of the jury on this point ought not, in our opinion, to be disturbed.

There was also an objection to the verdict, under this assignment, on the ground that it was excessive, and, fur-

ther, that without sufficient and proper proof it allowed damages for the washing away of a part of the plaintiff's lot by the flood of July, 1916.

[5] The plaintiff himself was the only witness who testified on his behalf as to the amount of the damage. The substance of his testimony in this respect was that the building was rented at the time of its destruction for $125 a month under a lease which would expire in six months, and that, but for its destruction, it could thereafter have been rented for $200 a month; that the fair and reasonable value of the building alone was $8,500; that about one-fourth of the lot was washed away by the flood of July, 1916; that the property cost him in 1912 or 1913 $15,000, and its value in August, 1915, was $25,000; and that the lot alone, after July, 1916, was, at a fair valuation, worth $5,000. Some of this testimony was objected to, but the objections were not preserved by bill of exceptions. No objection appears to have been made at any time to the testimony by which the plaintiff placed a valuation on the building and stated the market value of the property before and after the injury thereto. The defendant introduced Gilbert J. Hunt, who testified that he had been appointed one of the assessors at every appointment for twenty years next prior to 1915, and that in his opinion the fair value of the building at the time of its destruction was approximately $5,000; but he was not asked about the value of the property as a whole, nor as to the value of the lot independent of the building either before or after the flood of 1916. This was all the evidence of any consequence bearing upon the amount of the damage, and, from the standpoint of the plaintiff, it was entirely sufficient to establish the amount fixed by the verdict.

[6] Nor can we interfere with the finding of the jury upon the ground that the evidence was insufficient and improper as to damage done to the lot by the flood of July, 1916.

As shown above, the plaintiff testified, without contradiction, that about one-fourth of the lot was washed away, and that while the property as a whole was worth $25,000 before the flood of 1915 the lot alone, after July, 1916, was worth only $5,000. His evidence indicates that he was referring to the market value, and was basing the estimate of his damage upon the difference between such value before and after the injury. It is contended that this was not a proper rule by which to measure the damage. We need not stop to consider that question. No objection was offered to that method of proof, and no countervailing evidence was produced. The plaintiff's method of calculation stood unchallenged by objection, and the result unquestioned, until after the verdict was returned. Under these circumstances we need not pass on the validity of the objection as an original proposition. It cannot be availed of now. *Jeffress* v. *Virginia Ry. & P. Co.*, 127 Va. 694, 732, 104 S. E. 393.

[7, 9] It was further insisted that the plaintiff ought not to have been allowed to recover anything for the damage to the lot itself because he did not, after the freshets in August, 1915, had thrown down the walls of the building, take steps to prevent further damage by rebuilding the wall along the water's edge. This argument is based upon a misconception of the general rule that a plaintiff must do what he can, reasonably, to minimize the damage which he claims for a breach of contract or for a tort. A defendant is liable only for the natural and proximate consequences of his breaches of contract or unlawful acts, and if the plaintiff has rendered these consequences more severe to himself by some voluntary act from which it was his duty to refrain, or by his neglect to reasonably exert himself to limit or minimize the injury, and thereby suffers additional injury

from the defendant's original wrong, evidence is admissible in mitigation to ascertain the extent to which the damages claimed for such original act of the defendant are attributable to such subsequent act or omission of the plaintiff. 1 Sutherland on Damages (3d ed.) sec. 155; *Stonega Coal Co.* v. *Addington,* 112 Va. 807, 812-813, 73 S. E. 257, 37 L. R. A. (N. S.) 969. We are not aware of, and could not approve, any authority for the proposition that a plaintiff is bound to anticipate and provide against new and future violations of contract or wrongful acts which the defendant himself could avoid. The item of damage here under consideration is not claimed as a result of the flood in August, but as the result of the flood nearly a year later. Both were alleged to have caused injury to the plaintiff's property by what may be regarded as separate and independent wrongful acts of the defendant. The rule here invoked by the defendant is always to be carefully limited to the requirement of only reasonably prudent action on the part of the plaintiff, and cannot be made to depend upon what the defendant upon afterthought may be able to show would have been more advantageous to him. 1 Sutherland on Damages (3d ed.), sec. 155, p. 397-8. The jury's verdict, upon sufficient evidence, found that the damage in August, 1915, and also in July, 1916, was due to the defendant's default as to the arches. We cannot hold that the plaintiff was bound to build a retaining wall after the flood of August, 1915, in anticipation of a continuing breach of duty on the part of the defendant, in order that the latter might thereby claim immunity from the consequences of its further wrongful acts. This would not be minimizing the damage resulting from a past wrong, but providing against a separate and future wrong.

It has been urged upon us that the court committed many errors to the prejudice of the defendant with respect to the instructions given to the jury. There were fifteen excep-

tions on this branch of the case in the lower court, followed by a like number of assignments of error, and they have been presented to us at great length and with characteristic earnestness and ability by the learned counsel appearing for the city. It will be scarcely feasible, and it is not in our opinion necessary, to discuss these assignments at any great length. The plaintiff's case, as alleged and tried, proceeded upon the theory that the city was liable for want of ordinary care in maintaining arches or outlets for a natural watercourse over which it had constructed certain of its streets. The evidence tended to support this theory, and the instructions, as a whole, though quite voluminous as a result of the form in which they were prepared and presented to the court, seem to us to present the issue in the case fully and fairly, and with due regard to all defenses upon which the city had a right to rely.

[10] The defendant offered an instruction which the court gave after adding the words "solely and proximately," and striking out the words, "The court tells the jury that a storm or freshet need not be unprecedented to be extraordinary and unusual, but may be so, although a similar storm or freshet may have occurred in each to two or three successive years." To these modifications the defendant excepted. The following is the instruction as given, except that the words inserted by the court are italicized, and the words stricken out by the court are both italicized and enclosed in parentheses:

"If the jury believes from the evidence that all or any part of the damage complained of was *solely and proximately* caused by an extraordinary and unusual flood or freshet in Shockoe creek and its tributaries that a reasonably prudent man in this locality would not have anticipated and guarded against, and not by a rise or freshet such as

persons of ordinary care and prudence would reasonably
expect and guard against the jury must find for the
defendant as to all damages so caused. (*The court tells the
jury that a storm or freshet need not be unprecedented to
be extraordinary and unusual but may be so, although a
similar storm or freshet may have occurred in each of two
or three successive years.*) The jury are the judges of the
character of the storm or freshet from the evidence, but
the burden of proof is on the defendant to show that the
flood or freshet was extraordinary and unusual. The bur-
den of proof does not necessarily mean the greater number
of witnesses, but does mean the greater weight of all the
testimony in the opinion of the jury, whether given by a
greater or less number of witnesses."

[11] The addition of the words "solely and proximately"
was proper. When the negligence of a defendant mingles
with an act of God in the production of an injury, the latter
does not constitute a defense. 1 Thomp. Neg. sec. 73; *Id.*
Vol. VIII (White's Supplement 1914), sec. 73; *M. & M.
Trans. Co.* v. *Upton,* 127 Va. 406, 103 S. E. 616. There
was evidence in the case upon which the jury might have
found that the city had not exercised reasonable fore-
sight with respect to the arches for the accommodation
of such freshets as might reasonably have been expected;
and in this view of the case, even though they believed
that the flood of 1915 was extraordinary to the degree
mentioned in the instruction, the plaintiff was never-
less entitled to recover as to any of the damage not
due solely to the unprecedented character of the flood. In
this connection it should be observed that in defendant's
instruction number one the court had already told the jury
that they could not find a verdict for the plaintiff unless it
was shown by "affirmative and preponderating evidence"
that "all or a definite part of the damage complained of

was caused by some act or omission of the city of which a man of ordinary care would not have been guilty and for which the city is responsible under the instruction of the court, and then only for such part thereof as was so caused." To have followed this instruction with the plaintiff's instruction number two as originally requested, and without limiting the exception to such damage as was caused solely and proximately by an act of God, would have resulted in error prejudicial to the plaintiff.

The trial court was also right in striking out the italicized words appearing within the parentheses in the above instruction. This change was in accordance with our view of the law as stated in 2 Farnham on Waters, section 577a, *supra,* approved by this court in *Director General* v. *Bryant's Admr., supra.*

[12, 13] Instruction number three as offered for defendant, except as to the italicized words, was as follows: "The court instructs the jury that the plaintiff in this case is bound by the allegations of his declaration which avers that the culverts and arches complained of were of sufficient and adequate size at the time they were built, and that the jury in considering of its verdict must accept as a fact that they were so adequate and sufficient. And the court tells the jury that the city having constructed arches and culverts adequate and sufficient in size at the time of their construction cannot be held liable in damages for not taking down and rebuilding the same so as to make them larger unless the jury believe from the evidence that before the overflows and damage complained of, experience had demonstrated that the arches and culverts had become too small by a sufficient number of other floods and overflows prior to the dates mentioned, and not due to such extraordinary and unusual rainfalls and freshets as are mentioned in these

instructions, or to the choking of said culverts and arches or other local causes, so as to convince a man of ordinary care and prudence of the fact that the arches and culverts had become too small and that it was necessary to take down and rebuild the same, *or unless the jury believe from the evidence that the city had by its improvements in providing for the growth of the city materially increased the volume and flow of the water under said arches.* The court further tells the jury that the burden of proving such previous overflows is on the plaintiff and that after it had thus become apparent that the arches were too small the city must have had a reasonable time before the overflows and damage complained of within which to plan and construct such new and larger culverts and arches."

The defendant excepted to the addition of the words "or unless the jury believe from the evidence that the city had by its improvements in providing for the growth of the city materially increased the volume and flow of the water under said arches." It is insisted that this language overlooks the clear right of the city to grow and improve its streets, and thereby necessarily increase the natural flow of the watercourse in question, but the jury could hardly have so understood the amendment. The instruction itself was directed to an insufficiency of the arches developing after their construction from causes for which the city was responsible, and the instructions as a whole made it clear that this was the final question in the case. The question of the right of the city to increase the natural flow by a due and orderly exercise of its right to grade and improve streets was quite different from the question of its right to depend upon arches and culverts theretofore constructed by it, sufficient to take care of the water under former conditions, but insufficient under conditions brought about by it in the prosecution of its street improvements. In *Atlantic*

*Coast Line R. Co.* v. *Southern Oil & Feed Mills,* 129 Va. 323, 106 S. E. 337, 339, we held that the duty of a railroad company with respect to culverts to take care of surface water coming through a natural drain does not end with the original installation, but is a continuing one, to be exercised with due regard to changed conditions affecting the flow of water to be accommodated by the culverts. The same principle in our opinion applies to the case at bar.

It is true that the italicized language in the instruction above, taken apart from the context and without relation to the other instructions given in the case, could be literally construed to mean that the city was to be held liable if by its improvements it had materially increased the natural flow of the water without regard to whether the arches were or not still adequate and sufficient; and the instruction would have been improved and clarified if it had expressly stated that such material increase would only render the city liable in event it was sufficiently large to affect the adequacy of the arches. It is not reasonably probable, however, that the jury would have put any such literal construction and inconsistent interpretation upon that part of the instruction. In one of the other instructions given on behalf of the defendant, the court explicitly told the jury that the city's "whole duty in this case was confined to the proper construction of the arches under the streets as explained in these instructions."

It is further to be observed that the instruction would have been erroneous without some such addition as the court made. It told the jury, in effect, that, if the arches were originally adequate, the city could wait until experience had demonstrated their inadequacy by other floods prior to those in August, 1915, before making any changes. This was not true if the city could reasonably be charged with knowledge that its own operations had so materially increased

the flow to be expected in time of flood as to render the outlets insufficient.

Instruction number six, given at the instance of the plaintiff, with certain additions by the court, is complained of. The instruction was as follows, the additions made by the court being indicated by italics: "The court instructs the jury that while the city of Richmond had the right to use Shockoe creek and its tributaries as a sewer or drain, and to lay out and pave streets and alleys through the territory drained thereby, and also *by the acquisition of the property from the owners thereof* to improve the bed of said creek and its tributaries so that they might better serve the purposes of a drain or sewer, and likewise had the right to *construct and* maintain in the drainage area of said creek and its tributaries sewers, culverts or drains for the purpose of collecting and carrying off the waters falling upon it accumulating within the said drainage area; yet the city of Richmond was bound to use all reasonable care, skill and diligence to provide such reasonable and proper means and facilities as would be reasonably necessary to carry off and discharge, without unnecessary damage to private property along said creek, the waters which might reasonably be anticipated or expected to fall upon or accumulate within said area; and if the jury believe from the evidence in this case that the city of Richmond had for some time prior to August 1, 1915, used Shockoe creek and its tributaries as *an open* sewer or drain for such part of the city as is embraced in the area now drained by said creek and its tributaries; that prior to said date it had for some time been engaged in laying out, constructing and paving streets *and alleys* within said district, and had also constructed therein culverts, sewers, or drains leading to and discharging into said creek the waters falling upon or accumulating within said territory, as shown on the maps

introduced in evidence, and that the natural effect thereof was to carry off and discharge the waters falling upon and accumulating in the said territory through Shockoe creek more rapidly and in greater volume and amounts than otherwise would naturally be the case; and if they further believe from the evidence that the city of Richmond thereupon failed to make such reasonable provision by the enlargement of the arches over the *said creek erected by the city* for the discharge of said waters through said creek as persons skilled in city engineering familiar with all the facts properly relating to the matter obtainable with reasonable care and diligence would deem reasonably necessary, and that through such failure the waters of said creek, on the 1st and 3rd days of August, 1915, and the 22nd day of July, 1916, from the rains then occurring, rose and damaged the property of the plaintiff as charged in the declaration, then they must find for the plaintiff, *unless the jury believe from the evidence that the real and proximate cause of said damage was not an ordinary freshet which could have been anticipated with reasonable certainty and ought to have been foreseen and guarded against in the exercise of ordinary care and prudence under all the circumstances in evidence, but was such an unusually violent storm of wind and water that the occurrence could not reasonably have been anticipated.*"

[14] In stating the general powers and duties of the city with reference to the bed of the creek and the protection of abutting property owners in general, this instruction may, as contended, have gone further than was either necessary or proper, but it was so plainly directed in its main purpose to the plaintiff's case and to conditions affecting the bed of the stream under the streets and the capacity of the arches, as to have been free from any probability of error prejudicial to the defendant.

[15] It is insisted that the instruction was wrong in holding the city to the duty of making such reasonable provision in respect to the arches "as persons skilled in engineering familiar with all the facts properly relating to the matter obtainable with reasonable care and diligence would deem reasonably necessary." The claim here is that the test should be that of reasonable care by an ordinary person and not by skilled engineers. Ordinary care depends upon the character of the work to be done. Where one is charged with  the conduct of matters requiring special skill and knowledge, it is not reasonable care to depend upon the judgment of unskilled persons. It may be conceded that, as contended, the city could not be held liable for the honest mistakes of its skilled engineers, but that question does not, as we think, arise in this case. Its engineers had recommended changes which, whether expressly designed for the purpose or not, would have prevented the damage complained of; and there was affirmative proof by other engineers of high standing that the arches had become too small by reason of changed conditions for which the city was responsible.

The objection to the concluding language of the instruction, added by the court for the benefit of the defendant, with respect to extraordinary freshets, is sufficiently disposed of by what we have heretofore said upon that subject in this opinion.

[16] The objection to the plaintiff's instruction upon the measure of damages is answered by our previous discussion of the motion to set aside the verdict. The instruction conformed to the method of proof adopted by the plaintiff without objection or contradiction on the part of the defendant, and the plaintiff was entitled to an instruction accordingly, even though it be conceded that upon proper objection some other rule or method should have been used.

*Jeffress* v. *Virginia Ry. & Power Co., supra.* It is, of course true that a plaintiff cannot recover damages without evidence of probative value, but there is no lack of such evidence here. The evidence established the damage and furnished a measure by which to estimate its amount. The defendant did not object to the method at the trial, and cannot be allowed to do so now.

The exception to the action of the court in refusing to give an instruction for the defendant to the effect that the plaintiff ought to have protected his lot against further damage after the floods of August, 1915, calls for no discussion in view of what has been said on that subject in dealing with the motion to set aside the verdict.

With regard to the remaining exceptions to the action of the court upon the instructions, we content ourselves by saying that in so far as they were not met by the complete and comprehensive scope of the instructions given as a whole, they have either been sufficiently covered by the foregoing discussion, or they are of minor importance and do not call for further comment.

[17] The only assignment of error remaining to be considered is that which calls in question the action of the court in permitting the plaintiff to introduce in evidence the reports and blueprints of the city engineers of Richmond for a number of years, for the purpose of bringing home to the city knowledge of the fact that the culverts were too small. These reports and blueprints were made by the engineers in the due course of their employment by the city, they related to Shockoe creek and its requirements, and, in our opinion, were entirely proper as evidence tending to show the city's knowledge of conditions with reference to the creek and in the territory drained by it. These conditions had a direct bearing upon the adequacy of the

13

culverts or arches, and the evidence in question was thus clearly relevant to the issue.

Upon the whole case we are of opinion that there is no error in the judgment complained of, and it must be affirmed.

*Affirmed.*